## THE STATE OF IOWA,

AT

## DES MOINES, MAY TERM, A. D. 1893,

AND IN THE FORTY-SEVENTH YEAR OF THE STATE.

| 87 | 659 |
|---|---|
| 106 | 564 |

Iowa Eclectic Medical College Association, Appellant, v. J. C. Schrader *et al.*, Board of Medical Examiners, Appellees.

| 87 | 659 |
|---|---|
| 113 | 234 |

| 87 | 659 |
|---|---|
| 119 | 403 |

| 87 | 659 |
|---|---|
| 140 | 71 |

1. **Board of Medical Examiners:** POWERS: CERTIFICATES TO PRACTICE. Under the provisions of section 1 of chapter 104 of Acts of the Twenty-First General Assembly the board of medical examiners have power, upon proper investigation, to determine the identity of applicants for certificates to practice medicine, the genuineness of their diplomas, and whether such diplomas were issued by a medical school legally organized and in good standing.

2. ———: ———: ———. Where a medical school has been determined by the board of medical examiners to be a school in good standing, within the meaning of the statute above cited, said board can not thereafter, upon charges being preferred against said school, without investigation declare said school not to be in good standing, and refuse certificates to those holding its diplomas.

(659)

3. ——: ——: ——: STANDING OF MEDICAL SCHOOL. The requirements necessary to constitute a medical school as one in good standing may be fixed by the board of medical examiners, and when such a school has been determined by said board, upon full investigation, not to be in good standing because of its failure to meet said requirements, its decision is final.

4. ——: ——: ——: CONSTITUTIONAL LAW. The above statutes are not unconstitutional as not being uniform in their operation, nor as granting to a class of citizens privileges not equally enjoyed by all, nor as the creation of a corporation by special laws.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

### TUESDAY, MAY 9, 1893.

ACTION by writ of *certiorari* to inquire into the legality of certain action of the defendant board with respect to the plaintiff college. Judgment was entered in the district court dismissing the petition, from which judgment the plaintiff appeals.—*Affirmed.*

*C. C. & C. L. Nourse*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for appellee.

GIVEN, J.—I. The inquiry in this kind of proceeding is whether the defendant has "exceeded his proper jurisdiction, or is otherwise acting illegally." Code, section 3216. When the defendant has jurisdiction, and is given a discretion, the courts can not, on *certiorari*, inquire into the correctness of its decisions upon matters of fact, nor review the exercise of the discretion given. *Hildreth v. Crawford*, 65 Iowa, 339; *Darling v. Boesch*, 67 Iowa, 702; *Smith v. Board*, 30 Iowa, 531; *Tiedt v. Carstensen*, 61 Iowa, 334. Our inquiry is exclusively as to jurisdiction and legality of action, and if jurisdiction existed, and the action was

1. BOARD of medical examiners: powers: certificates to practice.

legal, we must affirm, even though the motive was wrongful.  *Polk County v. City of Des Moines*, 70 Iowa, 351.

To understand the acts complained of and the complaints made, it is necessary to notice the following facts:  At, and for some time prior to, and ever since, the action complained of, the plaintiff was a legally incorporated and organized medical college, carried on for the purpose of giving instruction in medicine and surgery, and to confer degrees upon and issue diplomas to its graduates.  The defendants, Schrader *et al.*, constituted the board of medical examiners of the state, as provided in section 1, of chapter 104, of Acts of the Twenty-First General Assembly.  It is required by our statute that every person practicing medicine, surgery, or obstetrics within this state shall first procure a certificate from the board of medical examiners of his right to do so.  The said section 1 after providing that graduates in medicine desiring such certificates shall present his or her diploma to the state board of examiners for verification as to its genuineness, provides as follows:  "If the diploma is found genuine, and is issued by a medical school legally organized and in good standing, of which the state board of examiners shall determine, and if the person presenting and claiming such diploma be the person to whom the same was originally granted, then the state board of examiners shall issue its certificate to that effect, signed by not less than five physicians thereof, representing one or more physicians of the schools on the board, and such certificate shall be conclusive as to the right of the lawful holder to practice medicine, surgery, and obstetrics within this state."  At a meeting of the defendant board, May 30, 1888, "it was moved that the Iowa Eclectic Medical College, located at Des Moines, be recognized as in good standing."  This motion was adopted by a vote of five ayes to two

nays, and thereupon and thereafter certificates were issued to graduates of said college. On March 22, 1890, C. P. Evans, a graduate of said college in the class of 1889–90, exhibited his diploma to the secretary of the defendant board, which was then verified as to its genuineness, and returned to the applicant with a blank for making application for a certificate when he desired to do so. His application was not received until May 21, 1890, and no other application from the plaintiff's graduates was before the defendant board during that time. The defendant board, at its organization, adopted a schedule of minimum requirements as to qualifications of students on entering college, branches to be taught, how to be taught, length of course and attendance, facilities for teaching, and that "the aggregate graduates of a college shall not exceed forty-five per cent. of its aggregate matriculates during the period of five years ending with any session subsequent to sessions of 1885–86." At the regular meeting of the board, May 7, 1890, and when the board was about to adjourn until the regular meeting in November, written charges were received from Thomas A. Brazill against the plaintiff college, charging that it was conducted and operated in violation of the laws of the state, and specifying certain particulars. The specifications show a disregard of the requirements in every respect, except as to the per cent. of graduates. On receipt of these charges it was moved and carried that they be placed on file, and a copy be furnished to the plaintiff, with notice to appear at the next meeting of the board and answer the charges. Dr. Clark offered the following resolution, which was carried: "Resolved, that this board will not issue certificates to graduates of the Iowa Eclectic Medical College at Des Moines, for the session of 1889–90, until the standing of said college shall have been determined." Following this action the board adjourned until the November

meeting. At the regular November meeting the following proceedings were had. Thomas A. Brazill, the complainant, and Dr. John Cooper, dean of the plaintiff college, being present, were each sworn and examined. At the conclusion of the evidence the following was adopted, by unanimous vote: "Resolved, that in the opinion of this board the charges against the Iowa Eclectic Medical College, preferred by Mr. Brazill, are not fully sustained, no witness for the prosecution other than himself having testified; but on the testimony of the dean of the faculty of the college aforesaid, to wit, Dr. John Cooper, himself, we find sufficient corroborative evidence to satisfy us that the teaching in said college is not up to our minimum requirements, and, therefore, we feel constrained to withhold certificates from the graduates of said college. On motion, the secretary was authorized to withhold all applications from colleges not now authorized by this board until next meeting of the board. The secretary called attention to the application of Charles P. Evans, a graduate of the said Iowa Medical College, on file in the office of the secretary since May 12, 1890." The record of this date (November 20, 1890) shows the following relative thereto: "Charles P. Evans, a graduate of the Iowa Eclectic Medical College for the season of 1889–90, applied for a certificate to practice medicine in the state of Iowa. It was moved and seconded that the application be rejected, on the ground that he fails to furnish satisfactory evidence of having graduated from a college recognized by this board as in good standing."

The appellant's contentions are that said action of the defendant board is illegal because not authorized by the statute, and, if authorized, is illegal because a statute so authorizing is in violation of the constitution. There is a diversity of opinion as to the necessity for such statutes, but with that we have nothing to

do. Our inquiry is whether the statute authorized the action had, and, if so, whether that authority is in contravention of the constitution. In pursuing these inquiries we must have in mind the purpose of these statutes, which evidently is the protection of the public against incompetent persons practicing medicine, surgery, or obstetrics, by restraining the practice to those sufficiently learned in that profession. As a means of determining who are thus learned, the board of medical examiners was created, with authority, subject to certain restrictions, to determine who are entitled to certificates authorizing them to practice medicine. This they determine upon examination of the applicant, or upon his diploma, "issued by a medical school legally organized and in good standing." A genuine diploma from such a school is made sufficient evidence of learning to entitle the holder to a certificate. It must be ascertained, however, that the diploma is genuine, that it is to the person presenting it, and that it was issued by a medical school legally organized and in good standing. The statute, section 1 of chapter 104 of Acts of the Twenty-First General Assembly, expressly authorizes the state board of examiners to determine these matters. That board may determine not only the identity of the applicant, the genuineness of the diploma, but also whether it was issued by a medical school legally organized and in good standing. To the end that such determinations may be intelligibly and properly made, section 2 authorizes any member of the board "to administer oaths and take testimony in all matters relating to their duties as examiners aforesaid." The statute contains no other provision as to how these matters shall be inquired into and determined; but as said in *Wood v. Farmer*, 69 Iowa, 537, "It is a familiar rule of law that authority to do an act implies authority to do all other acts necessary to be done in executing the power

conferred. The law will always presume the existence of authority to do acts incidental and necessary to the discharge of lawful power." We think it clear that the defendant board did have power, by proper investigation, to determine the identity of applicants, the genuineness of their diplomas, and whether such diplomas were issued by a medical school legally organized and in good standing.

II. The first action complained of is that of May 7, 1890, upon the charges being filed, resolving that the board would not issue certificates to graduates of the plaintiff college of the class of 1889–90 until the standing of the college had been determined. This action was unauthorized, unjust and arbitrary. It was taken without investigation, and without other cause or information than the filing of charges by a stranger, who did not even present them in person, but by messenger. It was taken when no application for a certificate was pending, Evans not having presented his until May 21. It was in the face of their former action determining the plaintiff college in good standing, upon the faith of which the course of instruction was continued, and students encouraged to attend. It deprived the graduates of the class of 1889–90 of receiving certificates, without investigation, and, by adjourning until November, left the college and its graduates without even the hope of investigation or relief until that time. The future of the college depended upon whether the defendant board would continue to recognize it as in good standing, for without such recognition it must close its doors. It was known that its next term commenced in October, and that this action must tend to lessen its patronage; yet the adjournment was until November, without providing for an earlier meeting, as the statute authorizes, and as a due regard for the rights of the plaintiff college and its graduates would

have suggested. There is surely much in this action
of the defendant board to warrant the criticism that is
made upon it by plaintiff's counsel. It was illegal
because it reversed the former action of the board
without any investigation and without sufficient cause.
The constitutionality of the statute might well be
questioned if it authorized the board to determine,
without investigation, that a particular medical school
was not in good standing, and especially so when that
school had been previously determined to be in good
standing. We do not say that the board is concluded,
by having once determined that a school is in good
standing, from thereafter determining differently, but
only that it has not power to do so arbitrarily and
without investigation. We do not say that such
inquiries must be attended with the formality of a trial
in court, but the determination must be based upon
inquiry and facts, and not upon the mere arbitrary
will of the board.

III. The remaining complaint is against the
action taken upon the investigation had November 21,
1890. The complaint is not against the
manner of the investigation, but against
the result as shown in the resolutions
copied above. The finding was "that the teaching in
said college is not up to our minimum requirements."
The board having authority to determine the standing
of colleges, it was certainly proper that they should
advise them in advance what would be required of
them. The requirements prescribed, save the one
quoted above, look to the thoroughness of the edu-
cation to be given, and are in harmony with the purpose
of the statute. The standing of a college, as contem-
plated in this statute, is rather what the college is, in
respect to the thoroughness of its course, than what it
may be reputed to be. The board was fully authorized
to determine, upon proper investigation, that a college

was not in good standing that did not meet the minimum requirements as to extent and thoroughness of its course.

The legality of the requirements as to the per cent. that may graduate is not involved in this case, but, as it has been discussed, we may say that it is certainly questionable.    While the graduation of an unusual per cent. may be ground for closer scrutiny, it may well be questioned whether the defendant board may arbitrarily say that but forty-five per cent. shall be permitted to graduate.

The standing of the plaintiff college was a matter within the jurisdiction of the defendant board to determine, and on November 21, 1890, after a full and fair examination, it determined that said college was not in good standing because its teaching was not up to said minimum requirements.    The board having jurisdiction to determine this question of fact, and having determined it, upon full investigation and evidence by unanimous vote, we must hold their action legal, even though we might reach a different conclusion on the facts if it were our province to consider them.    Much is said in argument about the composition of the defendant board as to the different schools of medicine, but, as the statute does not require that the different schools shall be represented on the board, its composition can not affect its jurisdiction or the legality of its acts in the respect under consideration.

IV.    The appellant's remaining contention is that, if the statute conferred power upon the defendant board to do the acts complained of, it is in violation of section 6, of article 1, and section 1, of article 8, of the constitution. Said section 6 is as follows:    "All laws of a general nature shall have a uniform operation;    the general assembly shall not grant to any citizen or class of citizens privileges or immunities which,  upon  the same

4. ——: ——: ——:
constitutional
law.

terms, shall not equally belong to all citizens." Section 1 of article 8 is as follows: "No corporation shall be created by special laws; but the general assembly shall provide by general laws for the organization of all corporations hereafter to be created, except as hereinafter provided." The exceptions provided have no application to this case.

In *McAunich v. Mississippi & M. Railway Co.*, 20 Iowa, 343, the rule was announced as follows: "These laws are general and uniform, not because they operate upon every person in the state, for they do not; but because every person who is brought within the relation and circumstances provided for is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of persons within the scope of their operation." This rule has since been followed in many cases, notably in *Iowa Railroad Land Co. v. Soper*, 39 Iowa, 112; *Deppe v. Chicago, R. I. & P. Railway Co.*, 36 Iowa, 52. The statute under consideration is clearly within this rule "because every person who is brought within the relations and circumstances provided for is affected by the law." It is uniform in its operation "upon all persons in the like situation," and grants no privileges or immunities that do not equally belong to all citizens. Article 8 of the constitution, it will be observed, relates to the creation of corporations, and does not apply to the defendant board. It is not a corporate body, but a branch of the government. The authority to refuse certificates to graduates of medical schools not in good standing does not extend special privileges or immunities to other schools that are determined to be in good standing.

It is argued, on behalf of the plaintiff, that with the authority claimed by the defendant board it may determine "absolutely and unconditionally, without

limitation or restraint, and without appeal, what rights the graduates of the different colleges of the state shall enjoy." It is said: "The power to determine what colleges are in good standing, and what are not, is simply an arbitrary power, that may be exercised at the will of the board, without restraint and without remedy by appeal." It is true no appeal is provided for, but the students of a school that has not been determined to be in good standing, in common with all other persons, have the right to go before the defendant board and be examined, without regard to diploma, and, if found to have the requisite qualifications, to receive a certificate. It is not correct to say that the defendant board may determine whether a medical school is in good standing, arbitrarily and without restraint. We have seen that the law does not authorize such action, and that it is illegal. The defendant board acts under the restraints of law that require proper inquiry into the matters to be determined, and we may not presume that the defendant board will act arbitrarily and without investigation, and upon that presumption hold the statute that confers the power to be unconstitutional. This statute is not unlike many others found in the Code of Iowa, conferring authority upon officers and boards to determine similar questions as to qualifications, notable among which is our statute for the examination of teachers, applicants for admission to the bar, and to practice pharmacy and dentistry.

Our conclusion is that the defendant board exceeded its jurisdiction, and acted illegally, in the action taken May 7, 1890, and that a certificate should have been issued to C. P. Evans, upon his diploma from the plaintiff college, and his application made thereon May 21, 1890. We are of the opinion that the action of the defendant board, November 21, 1890, was within its jurisdiction, and legal. As the purpose of the petition

is to test the legality of this last action, the judgment of the district court dismissing the petition was correct, and is therefore AFFIRMED.