IOWA FARM CREDIT CORPORATION, Petitioner, v. M. E. HUTCHI-
SON, Judge, et al., Respondents.

JANUARY 23, 1929.

Emmert, James & Needham and Stanley A. Frick, for peti-
tioner.

Stevenson & Stevenson and Kelleher & Mitchell, for re-
spondents.

KINDIG, J.—This is an original action for a writ of certi-

orari. It was brought by the petitioner, Iowa Farm Credit Corporation, for the purpose of compelling the respondent, the Honorable M. E. Hutchison, judge of the sixteenth judicial district, to certify to this court a transcript of the records, evidence, and proceedings involved, including an order issued by him, requiring the production of certain books and papers. Accordingly, a justice of this court ordered the issuance of the writ. Immediately, that command was obeyed, and the writ was issued and served. In compliance therewith, the respondents made full certification and return.

From this appear the following material facts: On the 25th day of October, 1927, the petitioner, as plaintiff, commenced an action in the district court against the respondent Frank E. Conard, as defendant, to recover the sum of $1,529, due on a promissory note. A very lengthy answer was filed by the respondent Conard. Five principal defenses were included. These embraced: First, fraudulent representations concerning the purpose of the corporate scheme; second, issuance of stock certificates before the receipt of money as the purchase price therefor, and an untrue report to the executive council that cash had been thus received; third, want and failure of consideration; fourth, nondelivery of the stock; and fifth, delivery of the notes before a condition precedent authorizing the same had been performed. No objection was made to the sufficiency of any defense thus pleaded. Then, on December 5, 1927, the respondent Conard filed his petition for the production of books and papers, under the provisions of Sections 11316 and 11317 of the 1927 Code, which read, respectively, as follows:

"11316. The district or superior court may in its discretion, by rule, require the production of any papers or books which are material to the just determination of any cause pending before it, for the purpose of being inspected and copied by or for the party thus calling for them."

"11317. The petition for that purpose shall be verified, and must state the facts expected to be proved by such books or papers, and that, as the petitioner believes, such books and papers are under the control of the party against whom the rule is sought, and must show wherein they are material. The rule shall thereupon be granted to produce the books and papers, or

show cause to the contrary, if the court deems such rule expedient and proper.''

Resistance was made to that petition by the Iowa Farm Credit Corporation on January 5, 1928, which was amended on March 2d of that year. Admission was made therein that part of the books and papers referred to should be produced, and that the remainder ought not to be delivered to the respondent Conard, under the Code sections above quoted.

Upon those issues, the cause was submitted to the district court, and, after hearing thereon, that tribunal made the following order:

''That a rule should be and the same is hereby issued, requiring and directing the plaintiff to produce at the courthouse in the city of Des Moines in the county of Polk and state of Iowa, on the 24th day of March, A. D. 1928, at 10:00 o'clock A. M. on said day, to be there submitted for inspection and copying to the attorneys for the defendant, the books, papers, memoranda, and writings described and designated in the defendant's petition for production of books and papers, including the following:

'' (a). The original subscription contract signed by the defendant, Frank E. Conard, which paper was signed on or about the 26th day of January, 1922.

'' (b). A certain property or financial statement made and signed by the defendant, Frank E. Conard, and delivered on or about the 26th day of January, 1922.

'' (c). The letters, postal cards, and other written communications addressed by the said Frank E. Conard to the Iowa Farm Credit Corporation or to any officer of the said Iowa Farm Credit Corporation or representative of said corporation.

'' (d). The stock book of the said Iowa Farm Credit Corporation.

'' (e). The stock transfer books of the said Iowa Farm Credit Corporation.

'' (f). Any book of the said Iowa Farm Credit Corporation showing issuance of stock or recording payment for said stock.

'' (g). The several written applications of the said Frank E. Conard for loans, together with the property statements accompanying the same.

"(h). The stock certificate or certificates showing Frank E. Conard as a stockholder of said Iowa Farm Credit Corporation.

"(i). The books of the said Iowa Farm Credit Corporation showing the capital and assets of the said Iowa Farm Credit Corporation on January 26, 1922, and since that date.

"(j). The papers, records, writings, and memoranda of said plaintiff Iowa Farm Credit Corporation pertaining to or connected with any application to the executive council of the state of Iowa for authority to issue stock other than for money in said Iowa Farm Credit Corporation, including any appraisal made of the notes, property, and assets of said Iowa Farm Credit Corporation at such time.

"(k). The inventory or inventories of the assets of the said Iowa Farm Credit Corporation, including all such inventories made since the 26th day of January, 1922.

"(l). The minute book of the said Iowa Farm Credit Corporation describing the contract or contracts made with Floyd Douglas as an agent or stock salesman of the said Iowa Farm Credit Corporation.

"(m). All books, papers, records, writings, and memoranda pertaining to the solicitation of stock and issuance of stock in said Iowa Farm Credit Corporation.

"(n). All correspondence with the War Finance Corporation or with any other agencies of the United States government authorizing the making of loans by said Iowa Farm Credit Corporation or pertaining to the advancing of funds or money for loans made by said Iowa Farm Credit Corporation."

Consequently, the petitioner herein contends that, in so doing, the district court exceeded its jurisdiction, and acted illegally, because it required the petitioner to: First, produce books and papers which were not shown to be competent, relevant, or material for respondent's defense; second, produce improperly identified and undescribed records or documentary evidence; third, produce books and records tending to prove the petitioner's case and overcome the respondent Conard's defense; fourth, submit itself to unjust interference with and interruption of its business affairs; and fifth, suffer the disadvantage and handicap of having respondent Conard pry into the petitioner's case.

Hence, the petitioner demands that the district court's order be annulled, to the extent of the illegality.

Convenience suggests that the petitioner's propositions be considered in the order in which it made them.

I. Did the district court's order require the production of books and papers not material to the respondent Conard's defense? An answer to that question demands a review of the subject-matter alleged in the answer.

As before stated, the averments relating to the defense take a wide range, and are very extensive. Accusation is made, in defense No. 1, that a gigantic fraudulent scheme was promulgated by the petitioner, to obtain the execution of promissory notes by the respondent Conard and many others, under the pretense that each person so doing would be permitted by the petitioner corporation to apply for and obtain from it a personal loan in the amount of $10,000 without security. Continuing the allegation, the answer charges that the petitioner's only purpose was to thus fraudulently obtain the notes, and that it did obtain them, and refused to make the loans, when applied for, because it never intended so to do. Furthermore, the answer states that the petitioner at said time and place represented to the respondent Conard that it was in a position to make such loan because arrangements had already been perfected with the War Finance Corporation and other agencies of the United States government for such purposes, but that, in truth and in fact, all this was false and untrue. Those charges of fraud, together with others, were said by the respondent in his answer to have induced the execution and delivery of the note sued upon.

Under defenses numbered 2, 3, 4, and 5, the respondent Conard accuses the petitioner of issuing stock without receiving the cash value thereof, and falsely reporting to the executive council of Iowa that cash, or its equivalent, had been received therefor. Thus the petitioner was enabled to pretend that the respondent Conard's note was its property, while in truth and in fact the said note was delivered under the condition that it should not become effective until the loan of $10,000 was made. At no time was the stock ever delivered to said respondent. Therefore, this respondent continues that he received no consideration of any kind or nature for the execution of that note,

and that the same is attempted to be made effective by the petitioner in breach of faith. Manifestly, a great deal of ground is covered by this pleading.

Effort here has not been made to specify all the intricacies of the answer, for the reason that time and space will permit only a brief outline thereof. Floyd Douglas is claimed in the answer to be an agent or stock salesman of the petitioner's, and as such, made the representations and negotiations aforesaid. Similar defenses are alleged by the respondent Conard to be available to other stock subscribers in the petitioner company. Resultantly, he says, the petitioner is not in a position to carry out its promises, and never was.

The materiality of the books and papers under the defense set forth in the answer is the standard by which the correctness of the trial court's ruling is to be determined. Sections 11316 and 11317, supra; *Grand Lodge of United Workmen v. Webster County Dist. Court*, 150 Iowa 398; *Iowa L. & Tr. Co. v. District Court*, 149 Iowa 66; *Davis v. District Court*, 195 Iowa 688; *Hemmings v. Home Mut. Ins. Assn.*, 199 Iowa 1311; *Travelers Ins. Co. v. Jackson*, 201 Iowa 43. *Travelers Ins. Co. v. Jackson*, supra, suggests:

"We have held that the purpose of this statute is to require the production of documentary evidence which would be admissible as such in evidence. The statute applies to '*books or papers* which are material to a just determination' of the cause."

Again, *Davis v. District Court*, supra, likewise declares:

"The defendant should not be required to produce for the inspection of a petitioner immaterial evidence, or documents, books, or papers that are inadmissible upon proper objection."

Full compliance with the statutory requirements was made by respondent Conard, showing (according to his petition for the rule) the materiality of the books and papers enumerated by the trial court in its order. So the petitioner has no just complaint at this juncture.

II. Contention, in the second place, is made by the petitioner that the district court did not properly identify or describe the books and records named in its order.

Some particularity is essential in this regard, but absolute

precision is not required. *Grand Lodge of United Workmen v. Webster County Dist. Court* and *Davis v. District Court*, supra. The *United Workmen* case, supra, aptly discusses the subject in this language:

"It is not to be presumed that the petitioner is advised of the details of the evidence that may finally establish a given fact, and we think no more specific statement thereof should be required in this case. From the very nature of the case, it would be impossible for the plaintiff to designate with particularity the letters or records throwing light upon the disappearance and death of Cunningham."

Likewise, *Davis v. District Court*, supra, continues similarly:

"It is not always easy for the petitioner to specify with absolute precision the papers or documents desired, and some latitude must necessarily be allowed where this is true."

Also, the books and papers desired by the respondent Conard are in the possession and control of the petitioner. Conard,  therefore, does not know the form, condition, style, details, or the particular designation of them. Such knowledge is solely that of the petitioner. A more particular description thereof in the case at bar is not necessary, under the circumstances.

III. Is the order illegal because it requires the petitioner to produce books and papers tending to prove its case, rather than that of the respondent Conard? Claim is made to that effect.

According to the petition for the rule, and the showing made for the production of the books and papers, each item  named in the trial court's order is material, and will tend to prove the respondent's case. Evidently a sufficient showing was not made by the petitioner to the contrary. When that matter was presented to the trial court, it had a discretion concerning the decision, and, while acting within that realm, its conclusion  cannot be interfered with by certiorari. *Iowa L. & Tr. Co. v. District Court*, supra, and *Davis v. District Court*, supra. Appropriately this pronouncement is made in *Iowa L. & Tr. Co. v. District Court*, supra:

460

"The sections of the statute under consideration authorize a rule for the production of books and papers only when it is made to appear by the petition therefor that the same are material to the just determination of the cause then pending before it. While the court is given discretion in the matter, it is the plain intent of the statute that no rule shall be granted unless it is made to appear to the court, either by the petition or upon a hearing where the issuance of the rule is resisted, that the books and papers are material to the issues then before the court. * * * The trial court did determine that the books of the loan and trust company were material to the determination of the issue between the treasurer and the trustees. * * * The question presented by the writ is whether the defendant exceeded his jurisdiction, or otherwise acted illegally. If his action was merely erroneous, a writ of certiorari will not lie."

Following this, is the succeeding statement in *Davis v. District Court*, supra (on page 693):

"It is discretionary with the court whether a rule shall be entered; and, so far as the court confines its ruling within the discretion allowed by statute, or it is merely erroneous, it is not subject to review in this court by an original proceeding in certiorari. * * * If, however, the order goes beyond the discretion and authority of the court, and thereby becomes illegal, or the court exceeds its jurisdiction, it is subject to review by certiorari."

Within the issue presented to the district court was the respondent Conard's claim, on the one hand, and on the other, that of the petitioner. Jurisdiction to decide the controversy clearly rested in the respondent court. Illegality or excess of power does not appear. Certiorari cannot change the result.

IV. Further, the petitioner asserts that the order will result in an unjust interference with and interruption of its business affairs.  This objection, however, is without merit. The production, inspection, and copying are to be made in Des Moines, Iowa, which is the principal place of business of the petitioner, and the place where its books and papers are kept. Violation of judicial discretion consequently does not appear in the order.

V. In its fifth contention to sustain the writ of certiorari, petitioner maintains that the rule for the order amounts to nothing more than an authorization for the respondent Conard to pry into his opponent's case and obtain information to which he is not legally entitled.

Previous discussion largely disposes of this point. For, if the books and papers ordered produced are material, as above found, the order is not an authorization for the respondent Conard to pry into the petitioner's case.

Wherefore, the writ should be, and hereby is, annulled.— *Writ annulled.*

ALBERT, C. J., and EVANS, STEVENS, FAVILLE, and WAGNER, JJ., concur.