[L. A. No. 12935.   In Bank.—November 17, 1931.]

HAL R. CLARK, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Andrew J. Copp, Jr., for Petitioner.

Allen W. Ashburn and Philbrick McCoy for Respondent.

THE COURT.—The petitioner, Hal R. Clark, was notified to appear and show cause why he should not be suspended or reproved by reason of his violation of rule 3 of the Rules of Professional Conduct of The State Bar of California. The notice was issued by local administrative committee No. 11, for the county of Los Angeles, and his appearance in response to said notice was to be made before that committee at a time and place in said notice designated. The violation of other rules of The State Bar and of certain subdivisions of section 287 of the Code of Civil Procedure by petitioner was also alleged in said notice to show cause, but as he was exonerated as to these charges by the Board of Governors of The State Bar, no further reference need be made to them. The conduct of petitioner which it is alleged in said notice to show cause constituted violations of rule 3 of the Rules of Professional Conduct of The State Bar grew out of his connection with and employment as an attorney at law in certain actions filed in the Superior Court of the County of Los Angeles.

In response to said notice to show cause, the petitioner appeared and a hearing upon said charges was had before said committee. At the conclusion thereof the committee made findings wherein it found that petitioner had violated not only said rule 3 but other rules of professional conduct of The State Bar, as well as the provisions of certain sections of the Code of Civil Procedure. Upon these findings the committee recommended that petitioner be publicly reprimanded. . The record of the trial and hearing of petitioner before said committee was certified to the Board of Governors of The State Bar. That board after reviewing said record directed that petitioner be notified to appear before that body and show cause why "the measure of discipline should not be increased". Petitioner was duly notified of this action of the board and in response to the notice appeared before said board with his attorney, at which time and place a further hearing was had upon the said charges preferred against petitioner, and thereafter said Board of Governors made its findings where it found that petitioner was guilty of the violation only of said rule 3. At the same time it recommended that petitioner be suspended from the practice of law for the period of six months. The matter is now before us upon a petition for review filed by petitioner under section 26 of the State Bar Act.

The gravamen of the charge against petitioner is that he acted as attorney for a company bearing the name of Equitable Adjustments, Incorporated, and that the services rendered by him under his contract with said company constituted a violation of said rule 3. This contract was put in evidence at the hearing before the committee. We do not find it, however, among the exhibits forwarded to this court by The State Bar. A copy of it is set out in petitioner's petition for a review, and as no claim is made that it is not correctly set forth therein, we will assume that said petition accurately alleges the contents of said contract. By reference to this contract, we find that it is called by the parties thereto, an "Agreement of Employment". It bears date, March 29, 1929, was executed by the Equitable Adjustments, Incorporated, a Delaware corporation, as party of the first part, and Hal R. Clark, as party of the second part. Petitioner agreed therein to organize a legal department in connection with the business of the

adjustment company and to "devote all of his professional time and perform to the best of his ability such legal services for party of the first part as it may require in connection with the operation of its business of conducting a financing and claims adjustment and settlement company and of protecting its interests in and/or under certain contracts or agreements between third parties including the institution and/or prosecution in the name of said third parties of actions both in law and/or in equity in state courts as well as Federal courts". This is the only reference in the contract to the nature of the business of the adjustment company. For the services which petitioner agreed to perform, he was to receive a flat salary of $500 per month to be paid by the adjustment company. Petitioner testified that his attention was first called to the Equitable Adjustments, Incorporated, by an old friend of his who informed him that the company was contemplating the organization of a legal department in connection with its business, and was casting about for some reputable attorney to head such department. He further informed petitioner, so the latter testified, that the Equitable Adjustments, Incorporated, was composed of a number of well-to-do individuals whose purpose was more altruistic than mercenary and that "they were all such high type that they had more business coming to them than they could handle; that they were not like an ordinary company engaged in the business; that they looked more to the taking care of the injured than they did to making money; if a man was hurt or sick or in bed by reason of his injuries and unable to help himself, that they would advance him house rent and money for his grocery bills if they were due and if they had to have groceries, they would buy them, and if a recovery was had they would take over the money received or money that had been extended in behalf of the injured and would take out a fair compensation for their services". Petitioner claimed that in all the negotiations had by him with representatives of the adjustment company leading up to the execution of said agreement of employment, nothing was ever said by anybody that the adjustment company solicited business or was engaged directly or indirectly in the business of what is now commonly known as and has been frequently re-

ferred to in the decisions of the courts as "ambulance chasing". He further asserts that he had no knowledge or information which even led him to suspect that the adjustment company was engaged in the illegal business of ambulance chasing until the month of October, following the date of his contract, and that immediately on gaining this information he sought to be released from his contract with the company, and on November 8th of the same year he succeeded in obtaining a written cancellation of his "agreement of employment", whereupon he withdrew from the office of the adjustment company and established himself in the practice of law in another building in the city, and he has had no connection with the company since that date. To the foregoing facts the petitioner testified before the committee and later to the extent of his examination respecting these matters before the Board of Bar Governors.

On the other hand, H. B. Martin, who was the principal stockholder and the officer in charge of the affairs of the Equitable Adjustments, Incorporated, gave evidence which tended directly to contradict that given by the petitioner. It appears from his evidence that the Equitable Adjustments, Incorporated, was operating under a license from the insurance commissioner of the state, as an insurance adjuster, issued under section 633e of the Political Code. There is no question that its business was principally, if not exclusively, that of ambulance chasing. This witness testified that the petitioner was fully informed of the nature of the business carried on by the Equitable Adjustments, Incorporated, prior to entering into its employ, and at that time and at all other times during his said employment knew of the type of business in which the company was engaged.

Ordinarily this evidence would be sufficient to sustain a charge like that made against the petitioner, and a finding based thereon would not be questioned. However, there are certain circumstances surrounding this evidence which we think should be considered before taking it at its face value, and which require it to be carefully weighed before holding it sufficient to sustain the charges against the petitioner. It is quite evident from a reading of the record that Martin was greatly incensed at petitioner because of the latter's withdrawal as attorney for the adjustment concern, of which

Martin was the controlling spirit. He first refused to consent to petitioner's request for a termination of this relation, and it was only after petitioner had resorted to what might be considered rather drastic measures, that Martin yielded to petitioner's request and executed the writing which terminated petitioner's employment. At the time the parties terminated their contract there were left unsettled certain matters, and as to these the two men later failed to agree, and their relations became more strained. Martin was to write certain letters, which petitioner thought necessary for the proper protection of certain parties whom petitioner had represented in court while under his so-called agreement of employment. Petitioner, on the other hand, was to collect and pay over to Martin certain funds that had been deposited with the courts as jury fees in cases which, as we understand, were never tried. These matters were delayed and Martin employed an attorney to collect these jury fees from petitioner. On the attorney mentioning the matter to petitioner, the latter informed the attorney of their differences, and the attorney agreed to see that the letters were written and sent as agreed, and petitioner turned over to the attorney the warrant he had received from the county of Los Angeles for the jury fees, which warrant had been held but never cashed by petitioner. These matters greatly embittered Martin against petitioner, and as a result thereof he made complaint against petitioner, to the local administrative committee, and this proceeding based upon Martin's complaint was instituted against petitioner on May 16, 1930, over six months after the petitioner had severed his relations with the adjustment company and had moved his offices from the building in which it was carrying on business. In the meantime, Martin had apparently run counter to certain provisions of the criminal statutes of the state, and at the time he gave his testimony before the local administrative committee was in the charge of the sheriff of the county, after his conviction in the Superior Court of the County of Los Angeles of the crime of bribery, and he was then being held by said sheriff pending his appeal from the judgment of conviction in said action. Martin was the only witness called to prove the charge against petitioner, except a lady who entered the employ of the adjustment company on October 15, 1929, and who testified that she knew nothing

about petitioner's contract "until after he was gone, so I don't know whether he worked under it or not".

It will thus be seen that the only evidence against petitioner in support of the charges was given by the witness Martin. It is manifest from a mere reading of the testimony given by him that he was greatly embittered against petitioner and was a most partisan and prejudiced witness. In addition to this weakness in his testimony, Martin himself was discredited by proof of his being convicted of a felony, to wit, bribery. As against this testimony we have the evidence of the petitioner. It is true that he is an interested party, and for that reason his testimony should be scanned with care. The record, however, shows that he has been a practicing attorney for over twenty years and that his father before him and a number of his relatives were members of the legal profession. Petitioner formerly resided in Kansas, where he practiced law at the city of Independence, the place of his birth, for a number of years before coming to California. After arriving in this state he has followed his profession, and was connected with a number of the most reputable legal firms in the city of Los Angeles. During his years at the bar, his conduct has never been called in question except in the present proceeding. His record as an attorney of over twenty years' standing is without a blemish, except that which may have been cast upon it by the testimony of Martin. Under these circumstances, charged as we are with the responsibility of finally determining the weight and sufficiency of the evidence in proceedings of this nature, we are unable to accept the evidence of Martin, a prejudiced and a partisan witness, and discredited by a judgment of conviction of a felony as against that of petitioner, who, though personally interested in the final outcome of this proceeding, bears an enviable reputation as a member of the bar of this state with a record reaching back over years of faithful and honorable service in the profession of his choice.

We, therefore, are of the opinion that the evidence against petitioner is not sufficient to sustain the finding that he intentionally violated rule 3 of the Rules of Professional Conduct of The State Bar. The recommendation, therefore, of the Board of Bar Governors, based upon such finding, cannot be approved. It is, therefore, ordered that the proceeding against petitioner be dismissed.