[L. A. No. 17578. In Bank. Mar. 16, 1942.]

E. W. LAISNE, Appellant, v. THE CALIFORNIA STATE BOARD OF OPTOMETRY et al., Respondents.

H. A. Savage and Lawrence W. Young for Appellant.

Morris Lavine, Morse Craig and A. B. Bianchi as Amici Curiae on behalf of Appellant.

Earl Warren, Attorney General, and Lionel Brown, Thomas I. Coakley, J. Albert Hutchinson and Chas. W. Johnson, Deputies Attorney General, for Respondents.

H. E. Lindersmith, Maurice P. McCaffrey, Forrest M. Hill, Leonard Friedman, Elizabeth Doyle, Glenn V. Walls, Sheldon D. Elliott, Stanley Morrison, Lowell Turrentine and Edwin J. Owens as Amici Curiae on behalf of Respondents.

CURTIS, J.—A proceeding for a writ of mandate was instituted in the Superior Court of Fresno County to set aside an order of the California State Board of Optometry revoking appellant's certificate of registration to practice optometry in the state of California. After a hearing the superior court rendered its judgment denying the relief sought and discharging the alternative writ of mandate and the temporary restraining order previously issued against the board. It is from this judgment that an appeal is brought to this court.

The board of optometry made an order revoking appellant's license after a hearing as provided by sections 3090-3091 of the Business and Professions Code. The complaint before the board alleged violation by appellant of sections 3098 and 3125 of the same code and the board determined on the evidence introduced that appellant had violated the provisions of said sections.

After the filing of the petition for writ of mandate in the superior court, the respondent board made a motion to strike certain portions thereof and the motion was granted in part. Included in the portions stricken was that part of the prayer which read ". . . and that this court have a hearing and trial de novo." The only evidence considered by the superior court was the record of the proceedings had before the board, and on this evidence the court concluded that the appellant had violated sections 3098 and 3125.

On the authority of the cases of *Drummey* v. *State Board of Funeral Directors & Embalmers,* 13 Cal. (2d) 75 [87 Pac. (2d) 848], and *McDonough* v. *Goodcell,* 13 Cal. (2d) 741 [91 Pac. (2d) 1035, 123 A. L. R. 1205], appellant insists that he had the right to require the trial court in the mandamus proceeding to conduct what would be in substance and effect a trial de novo, in the course of which the parties would not be limited to the record made before the board. We have assumed from the record and for the purpose of this decision that the trial court denied appellant the right to introduce any new and material evidence and compelled him to submit his case solely upon the record and proceedings before the board of optometry. The validity of the judgment appealed from therefore hinges upon the action of the trial court deny-

ing the appellant the right to introduce such evidence. If the order of the trial court in this respect was proper, then the judgment should be affirmed. On the other hand, if the trial court was in error in denying appellant such right, the judgment should be reversed.

The specific ruling in the Drummey case was that on a proceeding in mandate in a superior court questioning the validity of an order by an administrative board revoking or suspending a license to practice a profession, the court had the power to exercise an independent judgment on all of the material facts relative to the issue of whether the petitioner had violated the particular sections of the act governing that particular profession. In the exercise of such independent judgment it was held that the court must consider all material evidence and was not confined to the record of the proceedings before the board. If the court were so confined, it would not be exercising an independent judgment on all the facts material to the issue. It was further held that such independent judgment on the facts by a court was necessary because the entire judicial power of the state is vested in certain enumerated courts by article III, section 1, and article VI, section 1, of the Constitution of this state, and also because the person whose license had been revoked or suspended by the action of the board would otherwise be deprived of a property right without due process of law as guaranteed by both the federal and state Constitutions.

The necessity for the exercise of an independent judgment on the facts and the receipt of any material evidence regardless of the record of the proceedings before the board is apparent from the following facts. The powers of the government of the state are divided into three separate departments—the legislative, executive and judicial. (Article III, section 1, of the state Constitution.) State-wide judicial power may be exercised by only three *enumerated* courts, viz., the Supreme Court, the District Courts of Appeal, and the superior courts. (Article VI, section 1, of the state Constitution.) No other body can exercise state-wide judicial power except as the result of constitutional amendment. (*Pacific Coast Casualty Co.* v. *Pillsbury*, 171 Cal. 319 [153 Pac. 24]; *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407 [156 Pac. 491, Ann. Cas. 1917E, 390].) If, therefore, some agency with state-wide jurisdiction, other than one of the enumerated courts, without sanction by constitutional amendment, exer-

cises or attempts to exercise judicial power, such action is in direct violation of the articles of the state Constitution cited above.

It is true that there can be no complete separation of powers of government in an ever changing social order. It is equally true that each department for its own existence must in some degree exercise some of the functions of the others. That there can be no rigid line over which one department cannot traverse has been recognized since the first test of the doctrine of separation of powers. There still remains, however, this unalterable fact: When one department or an agency thereof exercises the complete power that has been by the Constitution expressly limited to another, then such action violates the implied mandate of the Constitution. If, in the instant case, the superior court in the mandate proceedings were limited to the evidence presented before the board, or if the findings of fact by the board were conclusive on the court, then the board would be exercising the complete judicial power reserved to the enumerated courts. The appellant's right to practice optometry was a vested property right. (*Hewitt* v. *State Board of Medical Examiners,* 148 Cal. 590 [84 Pac. 39, 113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N.S.), 896]; *Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965].) In the proceeding against him by the board all the rights of "procedural" due process were accorded him, viz., notice, right to appear and answer the charges made against him. Witnesses were subpoenaed and evidence was taken. A reporter was present and a record made of the whole proceedings. At the conclusion of the hearing an order was made revoking appellant's license to practice. This then would be an exercise of the complete judicial power that was contemplated by the framers of the Constitution, and appellant would be deprived of his constitutional right unless he had a right to go into a court of law and question the validity of that order by the introduction of any material evidence to prove that he did not commit the acts alleged.

This problem is not a new one and on numerous occasions the courts of this state have been called upon to prevent the complete extinction of the doctrine of separation of powers. In the early case of *Pryor* v. *Downey,* 50 Cal. 388 [19 Am. Rep. 656], in declaring a statute unconstitutional which attempted to validate a judgment of a court void for want of

jurisdiction, the court stated at page 403: "The Legislature of California cannot exercise any judicial function, and no person in this State can be deprived of life, liberty or property without due process of law." And again at page 406: "If we assume the act to have validated the Forster sale . . . then the lands which up to the date of the act . . . belonged to the heirs of Nathaniel M. Pryor, from that date became the property of other persons, and this transfer was accomplished by the legislative act alone. And even if we could indulge the fiction that the parties to be deprived of their estates had notice of the intended act, and a hearing and opportunity to produce witnesses, or to show cause why the act should not be passed, *this would have been a species of trial, and the exercise of judicial power by the Legislature.*" [Emphasis added.] And again at page 408: ". . . A judgment must be the result 'of due inquiry, sufficient to satisfy the discretion and convince the judgment of the officer of the law, *in whom the authority and jurisdiction to decide the questions involved have been duly vested.*' (*Denny* v. *Mattoon,* 2 Allen, (Mass.) [361] 380 [79 Am. Dec. 784].)" [Emphasis added.] Chief Justice Beatty in a concurring opinion in *Glide* v. *Superior Court,* 147 Cal. 21 [81 Pac. 225], makes the following pertinent observation at page 30: "Vested rights of property and contract rights are placed by the constitution under the protection of the courts, where alone the questions of law and fact upon which they depend can be finally decided." In *Chinn* v. *Superior Court,* 156 Cal. 478 [105 Pac. 580], a statute provided for the formation of an irrigation district, with the right of appeal to the superior court. The superior court refused to act on the ground that the statute was unconstitutional as in violation of article VI, section 1. Mandate was brought to force the superior court to act. The writ was denied and the act held unconstitutional, the court stating at page 480: "It is a well-recognized principle that where the judicial power of courts, either original or appellate, is fixed by constitutional provisions, the legislature cannot either limit or extend that jurisdiction." Again, in the case of *Griffin* v. *City of Los Angeles,* 134 Cal. App. 763 [26 Pac. (2d) 655], it is stated at page 771: "The jurisdiction of superior courts is conferred by the constitution, and cannot be taken away by any act of the legislature. (*City of Tulare* v. *Hevren,* 126 Cal. 226 [58 Pac. 530].)"

The language found in that group of cases involving ques-

tions which arose after the passage of the Workmen's Compensation, Insurance, and Safety Act of 1913 conclusively determines the issue under discussion here. In annulling an award made by the Industrial Accident Commission because the injury did not arise "in the course of" the employment, the court in the case of *Pacific Coast Casualty Co.* v. *Pillsbury,* 171 Cal. 319 [153 Pac. 24], had occasion to refer to the constitutional provision giving the legislature the power to create the Industrial Accident Commission and also to article VI, section 1. On page 322 is found the following statement: "The constitutional provision is that the legislature may 'create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment.' It proceeds to declare that the legislature may establish an industrial accident board and empower it to settle disputes concerning the liability which the legislature may create under the authority so given. (Article XX, section 21.) *This action by such board would be an exercise of judicial power. For that purpose it is, in legal effect, a court.* Section 1 of article VI vests the judicial power of the state 'in the senate, sitting as a court of impeachment, in a supreme court, district courts of appeal, superior courts,' and such inferior local courts as the legislature may establish. *Under this provision the legislature would be without authority to give judicial power to any general state board or tribunal.* Except for local purposes the section disposes of the whole judicial power of the state and vests all of it in the courts expressly named therein, leaving none at the disposal of the legislature. Authority to the legislature to create another state tribunal and vest it with judicial power over this new class of cases must be sought for elsewhere in the constitution. It is found only in the aforesaid section 21 of article XX. It follows that this section measures and limits the legislative power in that respect . . ." [Emphasis added.]

The case of *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407 [156 Pac. 491, Ann. Cas. 1917E, 390], is also of particular interest because of statements of the reasons why the action of the Industrial Accident Commission is an exercise of judicial power as stated in the Pacific Coast case, *supra.* The court points out that the commission has power to administer oaths, issue subpoenas, take testimony and punish for contempt. Notice is served on the adverse party

and he is given opportunity to answer. After hearing by the commission, it makes and files its findings of facts and its award. The findings are "conclusive and final." The court states at pages 412-413: "The commission, in exercising these powers, is performing precisely the same functions that are performed by any court in passing upon questions brought before it. . . . The Industrial Accident Commission is given the power to make binding orders or judgments. . . .

"In the absence of a special enabling provision of the constitution, judicial power could not be vested in the Industrial Accident Commission. Section 1 of article VI of the constitution provides that [quoting the provision]. *It is clear that the Industrial Accident Commission is not one of the courts thus designated. It is equally clear that the grant contained in the section of the constitution just cited, unless modified by other constitutional provisions, is exclusive.*" [Emphasis added.] The court concludes, however, that section 21 of article XX sufficiently modifies section 1 of article VI to permit the Industrial Accident Commission to act as a court.

The language quoted from the above cited cases may be directly applied to the instant situation. The only factual distinction is that in the Industrial Accident Commission hearings the rights of two individuals were involved, whereas in the board hearing in the instant case the state or an agency thereof is acting against one individual. However, in both situations there exists the issue of the deprivation of a property right and the vested interest remains the same whether one private individual is aligned against another or one against the state. Because the state institutes the action it does not follow that the person against whom the action is brought may be finally deprived of a personal or property right by a body other than a court.

The cases involving the powers of the Water Commission are equally applicable to the instant situation. These cases are referred to in the Drummey case, *supra,* and also in the case of *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal. (2d) 557 [59 Pac. (2d) 119], which held that certiorari would not lie to review the rulings of administrative boards. The concurring opinion of Chief Justice Shaw in *Tulare Water Co.* v. *State Water Commission,* 187 Cal. 533 [202 Pac. 874], is particularly relied on and is of sufficient materiality

to be directly quoted here. At page 542 the Chief Justice states: "If the Water Commission is acting judicially it is doing so because it is determining the rights and titles of individuals to private real property, and in that capacity it would be acting as a court as fully as a court of general jurisdiction would be acting when it adjudicates the title to real property. (Citing cases.)"

"The effect of section 1, article VI, aforesaid, is to vest in the courts therein mentioned the entire judicial power of the state. It is not within the power of the legislature to vest in any other body any general judicial power to establish and declare the right and title to private property. The Water Commission is not one of the superior courts of the state and could not be made such court or be given the powers thereof, and it is not an inferior court with jurisdiction limited to incorporated cities, or towns, townships, counties, or cities and counties. On the contrary, its jurisdiction is statewide. Consequently, it is not a court which comes within the purview of said section 1 and it is not within the power of the legislature to give that commission such judicial power. (*Western etc. Co.* v. *Pillsbury*, 172 Cal. 413 [Ann. Cas. 1917E, 390, 156 Pac. 491]; *Pacific etc. Co.* v. *Pillsbury*, 171 Cal. 322 [153 Pac. 24].)"

This concurring opinion in the Tulare Water Co. case was expressly approved in *Mojave River Irrigation District* v. *Superior Court*, 202 Cal. 717 [262 Pac. 724]. In that case a petition for prohibition was brought to prevent the superior court from reviewing an order of the Department of Public Works (Water Division) as provided by section 1b of the Water Commission Act. The writ was granted on the ground that the review provided could neither be on certiorari or appeal. It was further determined that the action in the superior court could not be regarded as an original proceeding because the evidence that could be introduced was limited as was the judgment that could be rendered.

Both of the preceding cases were subsequently approved in the case of *Yuba River Power Co.* v. *Nevada Irr. Dist.*, 207 Cal. 521 [279 Pac. 128]. In that case the plaintiff had applications for appropriation pending and brought suit to quiet title to determine adverse claims to the water so sought as between itself and an upper claimant. In reversing a judgment based upon an order sustaining a demurrer by the

trial court, this court stated at page 525: "The court in said cause (*Tulare Water Co.* v. *State Water Com., supra*) further clearly intimated that neither the question of priority between claimants nor the existence or nonexistence of unappropriated waters in a stream were questions to be finally determined by the water commission. The effect of this holding was sought to be obviated by the enactment of a new section, known as 1b (Stats. 1923, p. 162), providing for a hearing by the superior court upon applications for permits to appropriate water. This court, in *Mojave River Irr. Dist.* v. *Superior Court,* 202 Cal. 717 [262 Pac. 724], declared said enactment invalid and sustained the pronouncements of the court in *Tulare Water Co.* v. *State Water Com., supra,* to the effect that no judicial power had been or could be lawfully conferred upon the state water commission or its successor. This doctrine is also set forth in *Department of Public Works* v. *Superior Court,* 197 Cal. 215 [239 Pac. 1076].)"

The above group of cases cannot be distinguished from the situation in the instant case. Just as a vested property right was there involved so here a vested property right is in existence. Such right cannot be finally destroyed by a non-judicial body if the action of that body is questioned in a court of law in a mandate proceeding.

The cases interpreting the State Bar Act strengthen our conviction that if finality were given to the action of an administrative agency, such would be an unconstitutional exercise of judicial power. In the case of *In re Shattuck,* 208 Cal. 6 [279 Pac. 998], the constitutionality of the State Bar Act as it read in 1927 was attacked as giving judicial power to the Board of Bar Governors. The act nominally gave the Board of Bar Governors power to disbar or suspend. Section 26 of the State Bar Act provided that "Any person so disbarred or suspended may, within sixty days after the filing of said certified copy of said decision, petition said supreme court to review said decision." The court in commenting on this section stated at pages 8-9: "The term 'review' as used in this and in certain other portions of the act we do not understand to bear the limited significance attributed to the 'writ of review or *certiorari*' as the same is defined and the functions thereof stated in section 1067 *et seq.* of the Code of Civil Procedure. To give it such limited meaning would result not only in narrowing the powers of this

court to the single issue of jurisdiction in the board to make such order, but would also be to consider said board as being invested with judicial functions which, under the inhibition of section 1 of article III of the state Constitution, the legislative department of the state government has no power to repose in such a board. The review of the evidence, findings and conclusions of the Board of Bar Governors which this term contemplates consists, and should consist, in a re-examination by this court of the entire record of the proceedings before said board as these are required to be kept and in due course transmitted to this court under the provisions of section 26 of the State Bar Act.'' That the findings of the Board of Bar Governors, although based on conflicting evidence, are not binding on this court; that the court can and sometimes has refused to sustain the findings of the board; and that the court can and does pass upon the weight of the evidence by a review of the whole record is now well established, and it has been so stated in numerous cases. (*In re Stafford,* 208 Cal. 738 [284 Pac. 670] ; *Fish* v. *State Bar,* 214 Cal. 215 [4 Pac. (2d) 937] ; *Clark* v. *State Bar,* 214 Cal. 281 [4 Pac. (2d) 944] ; *Bentson* v. *State Bar,* 216 Cal. 58 [13 Pac. (2d) 512].) It should be noted here that in disciplinary proceedings this court has confined itself to the record of the proceedings before the Board of Bar Governors. This may be said to be due to the fact that the board is an administrative arm of this court [*Fish* v. *State Bar, supra*], and has no effect on our conclusion that in situations such as the instant one a court may consider any new material evidence.

Such cases as *Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965] ; *Brecheen* v. *Riley,* 187 Cal. 121 [200 Pac. 1042] ; *Cuffield* v. *Board of Dental Examiners,* 12 Cal. App. (2d) 446 [55 Pac. (2d) 522] ; *Fuller* v. *Board of Medical Examiners,* 14 Cal. App. (2d) 734 [59 Pac. (2d) 171], and many earlier cases decided by the various District Courts of Appeal do not affect the views previously expressed. Those cases were considered on review by certiorari and were decided before the the case of *Standard Oil Co.* v. *State Board of Equalization, supra,* became final. [The Fuller case was decided one day after the decision of the Standard Oil Co. case, but no petition for a hearing was made in that case to this court.] The Standard Oil Co. case decided that certiorari was not and constitutionally could not be the proper method of review.

That case quotes at length from the case of *Van Camp S. F. Co.* v. *Fish & Game Commission*, 75 Cal. App. 764 [243 Pac. 702], wherein it was stated at page 767: "Except for local purposes the section [State Const., art VI, sec. 1] disposes of the whole judicial power of the state and vests all of it in the courts expressly named therein, leaving none at the disposal of the legislature." The Standard Oil Co. case was followed by the case of *Whitten* v. *California State Board of Optometry*, 8 Cal. (2d) 444 [65 Pac. (2d) 1296, 115 A. L. R. 1], in which it was expressly held at page 445 that "in the absence of a constitutional grant of judicial power a state board cannot exercise judicial functions and the legislature is powerless to confer such power upon it." That case practically overrules the long list of cases relied upon by respondents, such as *Suckow* v. *Alderson, supra,* and kindred cases. The Drummey case, *supra,* holding that a court must exercise its independent judgment on the facts, logically followed the Whitten case.

In the case of *Ray* v. *Parker*, 15 Cal. (2d) 275 [101 Pac. (2d) 665], the constitutionality of the Milk Stabilization Act as a whole was under attack, as it had been in the earlier case of *Jersey Maid Milk Products Co.* v. *Brook*, 13 Cal. (2d) 620 [91 Pac. (2d) 577]. The court held that, with the exception of the section giving the Director of Agriculture the power to fix damages under certain conditions, the act was a constitutional exercise of the police power of the state. Because of section 737.11 of the act, which gives the director the power to revoke or suspend a milk license "after due hearing upon a verified complaint signed and filed with the director by any interested person," it is argued that this case is thoroughly consistent with the respondents' contention as hereinbefore set out. Neither the facts nor the law of the Ray case warrant this conclusion.

In the present case the board of optometry had made an order revoking the license of appellant. Appellant then instituted an action in the superior court contesting the validity of that order. The question on appeal before this court is the type or extent of "review" that should have been granted appellant in the superior court in determining the question of whether he had committed certain acts in violation of the provisions of the Optometry Act which would justify the revocation of his license. No order of revocation of any per-

son's license had been made by the Director of Agriculture in either the Ray case or the Jersey Maid case. Section 735.6 of the milk act provides that any order of the director "may be reviewed by any court of competent jurisdiction." It would be only after an order of revocation of a license by the director and the contesting of that order by the aggrieved party in a superior court that the question of the scope of the "review" would become the same as that involved in the present case. On the authority of the Drummey case the only type of review that would afford appellant his full constitutional rights would be a complete trial de novo as outlined in the decision in that case. [13 Cal. (2d) 75, 87 Pac. (2d) 848.] It was there said at page 85: "The findings of the board come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence." Undoubtedly, the court in this reference to the "evidence" contemplated not only the record of the proceedings before the board, but such additional evidence as either party desired to introduce before the trial court. It should be noted that the Ray case, *supra,* cites and quotes from *Agricultural Prorate Com.* v. *Superior Court,* 31 Cal. App. (2d) 518 [88 Pac. (2d) 253], in commenting on the type of "review" provided by section 735.6 of the milk act. The court in that case stated at page 524: "It is quite clear it was intended by the right of review that an interested party should have a right to put in issue before a superior court a question arising as a result of the promulgation of any order the commission might make." After this quotation the Ray opinion cites the Standard Oil Co., Whitten, Drummey and McDonough cases, *supra,* which, of course, all stand for the propositions that an administrative board cannot exercise full judicial powers; that an administrative board cannot make conclusive findings of fact and thereon base an order which would deprive a person of a property right; and that such a person has the right to a trial de novo in a superior court. In view of the above, it seems idle to argue that the Ray case stands for just the contrary propositions.

Reference is made to the cases of *Gaylord* v. *City of Pasadena,* 175 Cal. 433 [166 Pac. 348]; *Globe Cotton Oil Mills* v. *Zellerbach,* 200 Cal. 276 [252 Pac. 1038]; and *East Bay Mu-*

*nicipal Utility District* v. *Department of Public Works,* 1 Cal. (2d) 476 [35 Pac. (2d) 1027], cited in the Ray opinion. The Gaylord case involved the constitutionality of a *local* ordinance and the powers of the administrator thereunder. This fact alone is sufficient to render impotent any language in the case which might tend to support the respondents' position. However, this further observation should be made in regard to the Gaylord case. It is disclosed by the opinion that the findings of the city electrician were questioned in the superior court, and the court determined that the building installations were safe and were not dangerous to life or property. This finding was contrary to the findings made by the city electrician. In other words, the aggrieved party was given a trial de novo in the superior court when he contested the ruling of the administrative agent.

The East Bay Municipal Utility District case is relevant only for its quotation from the Gaylord case; therefore, no comment need be made on it.

The Globe Cotton Oil Mills case is clearly distinguishable from the situation in the present case. There the Fish and Game Commission had refused to act on an application for a permit authorizing the petitioner to use a certain quantity of fish in its reduction plant, on the ground that it would be exercising judicial functions to do so. This court ordered a writ of mandate to issue and held that such actions would not transgress upon the exclusive functions of the judicial department. Here we have a "refusal to issue" not a "revocation," and thus, as was determined in the McDonough case, *supra,* no property right was involved. But more than that, the petitioner was not contesting the findings of the commission and the order based thereon, but was merely requesting that the commission act in the first instance.

In regard to the numerous cases containing language to the effect that administrative agencies may make findings of fact and the reasons of expediency given therefor, it must again be pointed out that it is *not* the fact-finding power alone that is involved in the present situation. ▮▮▮ It is the facts found plus the order based thereon depriving a person of a property right which is the full exercise of the judicial power. If one whose license has been revoked fails to question the order in a court of law, then, of course, the ruling of the administrative board will stand because such failure is an admission of violation. However, if the order is questioned in a

court of law, then under the Constitution of this state the petitioner must be given a trial de novo on the issues involved.

■ Up to this point the discussion has been devoted primarily to the necessity of a trial de novo because of the provisions of article III, section 1, and article VI, section 1, of the Constitution of this state. A further reason and one of equal strength is that if binding fact-finding power is conferred upon purely administrative boards, and if the courts in reviewing the administrative boards' actions do not exercise an independent judgment on the facts as well as on the law, the due process provisions of both the federal and state Constitutions will have been violated. In support of this proposition the Drummey case, *supra,* cites the cases of *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287 [40 S. Ct. 527, 64 L. Ed. 908]; *Crowell* v. *Benson,* 285 U. S. 22 [52 S. Ct. 285, 76 L. Ed. 598]; and *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38 [56 S. Ct. 720, 80 L. Ed. 1033]. The actual holdings of those cases and the strength of such holdings in view of numerous other and conflicting opinions by the Supreme Court of the United States (See Murray's *Lessee* v. *Hoboken Land & Imp. Co.,* 18 How. (U. S.) 272 [15 L. Ed. 372]; *Bauman* v. *Ross,* 167 U. S. 548 [17 S. Ct. 966, 42 L. Ed. 270]; *Interstate Com. Comm.* v. *Union Pacific R. R. Co.,* 222 U. S. 541, 547 [32 S. Ct. 108, 56 L. Ed. 308]; *United States ex rel. Tisi* v. *Tod,* 264 U. S. 131, 133 [44 S. Ct. 260, 68 L. Ed. 590]; *Del Vecchio* v. *Bowers,* 296 U. S. 280 [56 S. Ct. 190, 80 L. Ed. 229]; *Swayne & Hoyt, Ltd.* v. *United States,* 300 U. S. 297, 304 [57 S. Ct. 478, 81 L. Ed. 659]) have been the subject of much discussion by leading authorities in the field of administrative law.

The *Crowell* v. *Benson* case, *supra,* has been considerably weakened by the case of *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251 [60 S. Ct. 544, 84 L. Ed. 732]. In the Benson case the court, per Hughes, C. J., held that there were two "jurisdictional" questions of fact: (1) whether the injury occurred upon navigable waters and (2) whether the relationship of master and servant existed, that could not be conclusively determined by the administrative agent. Yet in the South Chicago case, also written by the Chief Justice, the question of fact of whether a man was a member of the crew of a certain vessel was held to be a question to be finally determined by the administrative agent. It is difficult to recognize any distinction between this latter question of fact and

the so-called "jurisdictional" facts mentioned above. Obviously, if the man was a member of the crew of the vessel, the administrative agent would not have jurisdiction to make an award under the Longshoremen's and Harbor Worker's Compensation Act. [44 Stat. 1424; 33 U. S. C. and U. S. C. Supp. IV, sec. 901 et seq.]

The opinion in the Drummey case, *supra,* recognized that there was some confusion in the federal cases, and it must be admitted that the cited cases appear to be exceptions to the general rule which gives federal administrative agencies the power to make conclusive findings of fact. However, this does not detract from the strength of the language of these cases when applied to the question of the powers of state-wide administrative agencies as controlled by the provisions of the Constitution of this state. Article III, section 1, of the federal Constitution vests the judicial power of the United States in one Supreme Court and "in such inferior courts as the Congress may from time to time ordain and establish." Under the federal Constitution then, with the exception of the Supreme Court, there are no enumerated courts. Therefore, the question of whether a certain inferior body created by Congress is exercising judicial power becomes relatively unimportant for the reason that if it is acting in a judicial capacity, it may be classified as one of the "inferior courts" which Congress is given the power to create. On the other hand, as previously pointed out, under the Constitution of this state, there are certain enumerated courts which may alone exercise state-wide judicial power to the exclusion of all other bodies. Therefore, if a body other than one of the enumerated courts makes findings of fact; on those findings determines that the provisions of a certain statute have been violated; and issues an order or renders a judgment which has the effect of depriving a person of a valuable property right, such action denies the aggrieved party the due process of law guaranteed to him by the state and federal Constitutions, unless such action by such body may be questioned in a court of law. It should always be kept in mind that the evil of administrative action which must be guarded against is not the fact-finding power, but the conclusiveness of the fact-finding power coupled with the order based on the findings made which would deprive a person of a property right. Such is the full exercise of judicial power, and such power in this state can be exercised only by one of the enumerated courts. The language

of the federal cases cited in the Drummey case, *supra,* is therefore peculiarly applicable to the powers of restriction on the powers of state-wide administrative boards under the state Constitution. On page 85 of the Drummey case is found a quotation from the case of *St. Joseph Stock Yards Co.* v. *United States, supra.* The quotation is concluded with the following sentence: "Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority." Regardless· of the strength or weakness of that sentence in relation to federal administrative agencies, it may be directly applied to administrative agencies of this state. The state Constitution limits the exercise of judicial power to the enumerated courts. The federal cases previously cited, which hold that federal administrative boards may make conclusive findings of fact, are therefore not controlling on this court when the power of a state administrative board is in question.

The distinction between the powers of state-wide administ-istrative boards and federal administrative boards is also existent between boards with state-wide authority in this state and local bodies created by the legislature. By article VI, section 1, of the state Constitution, the judicial power of the state is vested in the enumerated courts, municipal courts as may be established, and "such inferior courts as the legislature may establish in any incorporated city or town, township, county or city and county." This latter provision is similar to the provision in the federal Constitution. Therefore, it has been held that the rulings of local boards acting in a judicial capacity may be reviewed on certiorari. (See *Imperial Water Co. No. 1* v. *Board of Supervisors,* 162 Cal. 14 [120 Pac. 780]; *Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254 [208 Pac. 304]; *Ludolph* v. *Board of Police Commrs.,* 30 Cal. App. (2d) 211 [86 Pac. (2d) 118]; *Nider* v. *City Commission,* 36 Cal. App. (2d) 14 [97 Pac. (2d) 293].) That the rulings of local bodies might be reviewed on certiorari was recognized in both the Standard Oil Co. and Drummey cases. Cases in other states holding that state-wide administrative agencies might exercise judicial power and that their rulings might be reviewed on certiorari may be distinguished on the same ground. The Supreme Court of Arizona in the recent case of *Batty* v. *Arizona State Dental Board,* 57 Ariz. ―― [112

Pac. (2d) 870], so held and criticized the Standard Oil Co. case. However, the court failed to consider the difference between the provisions of article VI, section 1, of the California Constitution and article VI, section 1, of the Arizona Constitution. The latter provides: "The judicial power of the state shall be vested in a Supreme Court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law." This provision is quite similar to that of the federal Constitution [art. 1, sec. 1] but is clearly distinguishable from article VI, section 1, of the Constitution of this state, which confers upon the legislature the power to establish inferior courts only with local jurisdiction.

Respondent board urges that by not providing for a court hearing after determination by the board, the legislature intended that the board's action should be final or at least that a court should be confined to a consideration of the evidence introduced at the hearing before the board. As evidence of the legislative intent in such matters, we have only to refer to the act of the last legislature in proposing to the voters of the state a constitutional amendment [Senate Constitutional Amendment No. 8] which purports to give to the legislature the right "to confer power on administrative officers, boards or commissions to make decisions." If this proposed amendment is adopted by the people, it will authorize the legislature to confer upon such administrative bodies the right to exercise judicial power, the same power the respondent board claims the legislature now possesses. Obviously, the legislature in proposing said constitutional amendment was of the opinion that it now has no such power.

Other questions were raised in the briefs and on oral argument, but they are of minor importance and their determination would in no way affect our decision in this case. In consideration of our decision that the trial court erroneously denied appellant the right to introduce material and competent evidence at the trial of this action in the superior court, it is our opinion that the judgment should be reversed, and it is so ordered.

Shenk, J., Houser, J., and Carter, J., concurred.

GIBSON, C. J., Dissenting.—I dissent.

The majority opinion in this case is the culmination of a series of decisions in which this court, since 1936, has over-

turned long established rules in the field of administrative law. The constitutional principles announced by the majority will vitally impair the effectiveness of many administrative agencies upon which we rely for the expert conduct of the complex affairs of state government. It follows from this decision that a state-wide administrative agency is without power to make a binding determination of fact affecting rights of property and that any act of the legislature conferring such authority is unconstitutional. It is held here that, although such an agency is vested with statutory authority to revoke professional licenses, there is a constitutional requirement that after hearing and determination by the administrative board the entire matter must be tried anew in a court of law. The conclusion that the petitioner in this case is entitled to a trial de novo means, in the language of the author of the majority opinion as expressed in another case, ''a new hearing, or a hearing the second time . . . Such a hearing contemplates an entire trial of the controversial matter in the same manner in which the same was originally heard. It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held.'' (*Collier & Wallis* v. *Astor,* 9 Cal. (2d) 202, 205 [70 Pac. (2d) 171].)

Prior to 1936 it was established by a great many cases that where a state-wide board was given the power to revoke professional licenses for cause and where the supervision of the courts extended only to an inquiry as to whether the board had regularly pursued its authority, there was no violation of the provisions of the Constitution. (*Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965]; *Brecheen* v. *Riley,* 187 Cal. 121 [200 Pac. 1042]; *State Board, etc.* v. *Superior Court,* 201 Cal. 108 [255 Pac. 749]; *Bold* v. *Board of Medical Examiners,* 133 Cal. App. 23 [23 Pac. (2d) 826]; *Gustason* v. *Board of Osteopathic Examiners,* 10 Cal. App. (2d) 436 [51 Pac. (2d) 1106].) In this regard it seems very significant that although many professional licenses have been revoked in this state by administrative boards under statutory authorization, our attention has not been called to a single instance in which a trial de novo has been had before a court.

The constitutional doctrines which find their ultimate expression in the present case originated in two erroneous decisions of this court, one in the procedural field in 1936 and the other in the field of constitutional law in 1939. Both de-

cisions have been subjected to severe criticism by experts in this field of the law. In the first of these cases, *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal. (2d) 557 [59 Pac. (2d) 119], decided in 1936, it was held that the writ of certiorari would no longer lie to review the quasi-judicial acts of state-wide administrative agencies in California. (See criticism in Rode, *Administrative Adjudication in California and Its Review by the Writ of Certiorari,* (1937) 25 Cal. L. Rev. 694; Turrentine, *Restore Certiorari to Review State-Wide Administrative Bodies in California,* (1941) 29 Cal. L. Rev. 275; Gellhorn, *Administrative Law—Cases and Comments,* (1940) p. 819, n.) The second case, *Drummey* v. *State Board of Funeral Directors,* 13 Cal. (2d) 75 [87 Pac. (2d) 848] decided in 1939, held that the writ of mandate could be used to review the orders of professional licensing boards and thus fill the procedural gap caused by the refusal to permit the use of certiorari for this purpose. The reinstatement on mandamus of professional licenses suspended by the State Board of Funeral Directors was sustained, and it was held that the trial court was required under the state and federal Constitutions to exercise its independent judgment upon the facts as well as upon the law. This constitutional doctrine, obviously contrary to the former decisions in this state, was explained in *McDonough* v. *Goodcell,* 13 Cal. (2d) 741, 752 [91 Pac. (2d) 1035, 123 A. L. R. 1205], as having resulted from recent decisions of the United States Supreme Court which appeared to make such a conclusion "mandatory". (See, criticism in McGovney, *Administrative Decisions and Court Review Thereof, in California,* (1941) 29 Cal. L. Rev. 110.)

This case is not the first in which an opportunity has been presented to correct the error in the Standard Oil and Drummey cases. So long as the issue remained primarily one of procedure, however, there was no irreparable damage which required that the judicial error involved in those decisions be rectified. While it was possible, by use of the writ of mandate, to review the acts of state-wide administrative bodies and accord the findings of such bodies a substantial degree of finality, it appeared that the substantive evils resulting from the procedural error might be eliminated in time. (Cf. *Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal. (2d) 321 [109 Pac. (2d) 935]; *Webster* v. *Board of Dental Examiners,* 17 Cal. (2d) 534 [110 Pac. (2d) 992]; *Olive Proration etc. Com.*

v. *Agricultural etc., Com.,* 17 Cal. (2d) 204 [109 Pac. (2d) 918].) The majority opinion in the present case, however, enunciates a doctrine of constitutional law which can be corrected only by a reversal of the decision or by constitutional amendment. The present holding goes far beyond the rule laid down in *Drummey* v. *State Board of Funeral Directors, supra,* although that fact is not immediately discernible from the face of the opinion. The Drummey case did not require a trial de novo by the court, but spoke of an independent judgment on the facts. This independent judgment, which was presumably to be exercised with reference to the evidence produced before the board, was tempered with the cautionary instruction that the board's findings were to be given a "strong presumption of correctness." (*Drummey* v. *State Board of Funeral Directors, supra,* p. 85; cf. McGovney, *op. cit. supra,* p. 129, et seq.) Under the trial de novo rule of the present case, however, no finality whatever is to be attributed to the findings of state-wide administrative agencies. This requirement of a trial de novo, based upon the rigid foundations of our Constitution, can no longer be said to affect matter of procedure only. We find it necessary, therefore, to trace the successive steps which the court has followed in reaching its present position.

### 1. *The Procedural Problem.*

In *Standard Oil Company* v. *State Board of Equalization, supra,* it was held that the writ of certiorari could no longer be used in this state as a means of reviewing the acts of state-wide administrative bodies, notwithstanding express statutory authorization therefor. Without discussing the nature of the particular act involved (in that case the assessment of an additional tax), the court decided that the action of the board could not have been judicial in nature because article VI, section 1 of the Constitution vests all judicial power in certain specified courts. Furthermore, it was said, the writ of certiorari may be used to review judicial power only and, that being so, it could not be used to review the act of the Board of Equalization in assessing an additional tax. This decision was soon followed by others which held that the judicial power was not involved in the revocation of a professional license by a state-wide agency (*Whitten* v. *California State Board of Optometry,* 8 Cal. (2d) 444 [65 Pac. (2d) 1296, 115 A. L. R. 1]; *Hartman* v. *Board of Chiropractic Examiners,* 20 Cal. App. (2d) 76 [66 Pac. (2d) 705]; *Jacobs* v. *Board of Dental*

*Examiners,* 24 Cal. App. (2d) 359 [75 Pac. (2d) 96]) nor in the suspension by the Commissioner of Corporations of a permit authorizing the sale of stock. (*Schwab-Wilson M. Corp.* v. *Daugherty,* 15 Cal. App. (2d) 701 [59 Pac. (2d) 1057].) Since these duties were said not to involve an exercise of judicial power, it was held that neither the writ of certiorari nor the writ of prohibition was available to review such acts. None of these cases suggest that the statutes vesting this kind of power in state-wide boards are unconstitutional. Rather, they characterize the power exercised as "administrative" in nature, and hold that the inapplicability of certiorari and prohibition to review administrative orders is caused by the limited nature of these writs.

From the procedural point of view alone, this conclusion is contrary to the weight of authority both in California and elsewhere. There are many cases where the writ of certiorari has been used to review orders of state-wide administrative agencies whose power, while quasi-judicial in nature, was not the basic judicial power vested by the Constitution in courts of law. These cases include assessments of taxes made by the State Board of Equalization as well as orders revoking professional licenses. (*San Francisco & N. P. R. R.* v. *State Board of Equalization,* 60 Cal. 12; *Suckow* v. *Alderson, supra; Brecheen* v. *Riley, supra;* see, Rode, *op. cit. supra,* p. 695, et seq.; Turrentine, *op. cit. supra,* p. 280, et seq.; McGovney, *op. cit. supra,* pp. 114, 146, et seq.) Furthermore, it has long been recognized that, of all the extraordinary common law writs, certiorari is the one best adapted to review the acts of boards, tribunals and officers which exercise quasi-judicial power, although concededly such bodies cannot constitutionally exercise the basic judicial power of courts of law. (14 C. J. S. 142; 10 Am. Jur. 534; 77 A. L. R. 1357; McGovney, *op. cit. supra,* p. 147.) Until the Standard Oil case in 1936, this was the established doctrine in California as well as in the rest of the nation. The effect of that decision and the ones which followed it was to limit certiorari and prohibition to a review of the orders of courts of law. This conclusion as to the nature of certiorari is not supported by the holdings of the cases cited. The two cases relied upon most heavily in the Standard Oil case are *Tulare Water Co.* v. *State Water Com.,* 187 Cal. 533 [202 Pac. 874] and *Department of Pub. Works* v. *Superior Court,* 197 Cal. 215 [239 Pac. 1076]. In each of these cases the court held that a statutory proceeding

before a state-wide administrative agency in which no formal hearing was authorized, in which no notice to opposing parties was provided, and in which the procedure did not contemplate the adjudication of any rights, was merely for the guidance of the agency in issuing a preliminary permit. (*Tulare Water Co. v. State Water Com., supra,* p. 537; *Dept. of Pub. Wks. v. Superior Court, supra,* p. 221.) Since the proceeding had no judicial aspect, either quasi-judicial or otherwise, it was obviously not a case in which certiorari would lie. The decision in the Standard Oil case, however, draws a far different conclusion from certain language of Chief Justice Shaw, concurring in the Tulare Water Company case. In addition to the fact that this language was not the basis for the decision in that case, it did not mean that certiorari could only be used to review an exercise of constitutional judicial power, as the Standard Oil case interpreted it to mean. (Turrentine, *op. cit. supra,* p. 283.) Chief Justice Shaw himself said shortly before the Tulare case, ''It must be conceded that the power given to the board to revoke or suspend the license of a person duly admitted to practice medicine . . . is judicial in its nature . . . That a board or tribunal so authorized exercises at least *quasi*-judicial power in so doing is well established by our decisions. The judicial function is to decide on the property or rights of the citizen . . . The determination that plaintiff was guilty and that his right to practice should be suspended comes clearly within the scope of these definitions. *Nevertheless it is now well established in this state that tribunals such as the board of medical examiners . . . are not courts in the strict sense; they are not exercising 'the judicial power of the state' as that phrase is used in the constitution . . . and that the statutes creating such boards and conferring upon them such powers are constitutional . . . It is also settled that where a board has exercised quasi-judicial power of the nature of that here in question, its decisions are subject to revision by way of certiorari.''* (*Suckow v. Alderson, supra,* pp. 249-250.)

On the procedural point, therefore, the conclusion reached in the Standard Oil case that certiorari will lie only to review the exercise of true judicial power by courts of law is erroneous. The cases therein cited hold that if it appears that the particular act sought to be reviewed does not involve any judicial or quasi-judicial functions whatsoever, certiorari will not lie. This recognized principle is far from the rule of the

Standard Oil case that only the exercise of constitutional judicial power can be reviewed upon certiorari and that the quasi-judicial acts of state-wide administrative boards can not be reviewed by this traditional procedure.

## 2. *The Constitutional Problem.*

It was immediately recognized that if the holding in the Standard Oil case could be confined solely to matters of procedure, no irreparable damage had been done since the customary kind of judicial review might be provided in some other way. (Cf. Rode, *op. cit. supra,* pp. 702-703.) A substitute procedure was, in fact, created by this court when it sanctioned the use of the writ of mandate in cases formerly reviewed by the writ of certiorari. (*Whitten* v. *Calif. State Board of Optometry, supra.*) So long as it was possible, by use of the writ of mandate, to evolve a proper relationship between the courts and administrative agencies, it did not seem essential to insist upon a return to the historically correct procedure from which the court had strayed. (Cf. *Bodinson Mfg. Co.* v. *California Emp. Com., supra.*)

*(a) The constitutional theories resulting from the Standard Oil decision.*

The procedural error of the Standard Oil case, however, soon led to the announcement of erroneous principles of constitutional law. Citing the Standard Oil case, which dealt with the nature of certiorari and not with the constitutionality of a delegation of quasi-judicial power, it was said for the first time in *Whitten* v. *California State Board of Optometry, supra,* p. 446, that it would be unconstitutional to confer *quasi-judicial power* upon state-wide administrative agencies. Consequently, the powers which such boards exercised could no longer be called quasi-judicial. (See, criticism of this reasoning in McGovney, *op. cit. supra,* p. 114; see, also, opinion of Supreme Court on denial of hearing, *Cullinan* v. *Superior Court,* 24 Cal. App. (2d) 468, 475 [75 Pac. (2d) 518, 77 Pac. (2d) 471].) It should be noted, at this point, that the Standard Oil case itself approved language which refers to these functions as quasi-judicial in nature. (*Standard Oil Co.* v. *State Board of Equalization, supra,* p. 563.) Instead of declaring the statutes vesting quasi-judicial functions in statewide administrative boards to be unconstitutional, however, the court undertook to bring these statutes within the new constitutional doctrines by altering the nature of the duties delegated to such boards by the legislature. Thus, despite a clear indication that the legislature intended a certain degree

of finality to attach to the quasi-judicial acts of administrative agencies, this court, under asserted constitutional compulsion, as will be seen later, has successively reduced that finality so as to make the duties of such boards ministerial, rather than quasi-judicial, in nature. The statement in the Whitten and Cullinan cases to the effect that a professional board does not and can not act quasi-judicially in revoking a license is both contrary to authority and unsupported by the only case relied upon, the Standard Oil case. That case does not invalidate the delegation of such power or classify it, except to say that these boards do not exercise the constitutional judicial power asserted therein to be required for the issuance of a writ of certiorari.

(b) *Reliance upon the requirements of the federal Constitution.*

In the next step, which was taken in the Drummey case, it was held that upon a writ of mandate the reviewing court was constitutionally required to exercise an independent judgment on the facts. In part, this conclusion rested upon the language in the Whitten case concerning quasi-judicial functions, but the main ground for the decision was the asserted requirement of the due process clause of the federal Constitution. (See, *Drummey* v. *State Board of Funeral Directors, supra,* p. 85; *McDonough* v. *Goodcell, supra,* p. 752.) The former doctrine will be examined in detail in connection with the majority opinion in the present case, but the discussion at this point will serve to demonstrate the mistaken reliance upon certain federal cases in the Drummey and McDonough cases. The formula laid down in the Drummey case was "independent judgment on the facts." This theory, which had no prior existence in California, was taken literally from the language of the United States Supreme Court in *St. Joseph Stockyards Co.* v. *United States,* 298 U. S. 38, 52 [56 S. Ct. 720, 80 L. Ed. 1033.] Two other federal cases were also cited *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287 [40 S. Ct. 527, 64 L. Ed. 908]; and *Crowell* v. *Benson,* 285 U. S. 22 [52 S. Ct. 285, 76 L. Ed. 598]. The conclusion drawn from these cases was that the due process clause of the Fourteenth Amendment to the federal Constitution required the state courts to re-examine the evidence upon which administrative boards had acted in suspending a professional license.

In reaching this conclusion the decision in the Drummey

case ignored the general rule followed in the federal system which makes administrative findings of fact conclusive if supported by substantial evidence. (Finality on fact of value in an eminent domain proceeding: *Bauman* v. *Ross*, 167 U. S. 548, 593 [17 S. Ct. 966, 42 L. Ed. 270]; see, *Crane* v. *Hahlo*, 258 U. S. 142, 148 [42 S. Ct. 214, 66 L. Ed. 514]. Finality as to value for assessment of duty on imported goods: *Hilton* v. *Merritt*, 110 U. S. 97, 107 [3 S. Ct. 548, 28 L. Ed. 83]; *Bartlett* v. *Kane*, 16 How. [U. S.] 263 [14 L. Ed. 931]. Finality for tax purposes: Murray's *Lessee* v. *Hoboken Land & Imp. Co.*, 18 How. [U. S.] 272 [15 L. Ed. 372]; *Helvering* v. *Rankin*, 295 U. S. 123, 131 [55 S. Ct. 732, 79 L. Ed. 1343]; *Phillips* v. *Commissioner of Internal Rev.*, 283 U. S. 589, 600 [51 S. Ct. 608, 75 L. Ed. 1289]. Finality on matters of fact in an alien deportation proceeding: *United States ex rel. Tisi* v. *Tod*, 264 U. S. 131, 133 [44 S. Ct. 260, 68 L. Ed. 590]. Finality in assessment of penalty for violation of immigration law by a shipping company: *Lloyd Sabaudo Soc.* v. *Elting*, 287 U. S. 329, 335 [53 S. Ct. 167, 77 L. Ed. 341]. Conclusive determination of facts in the field of governmental regulation: *Interstate Com. Com.* v. *Union Pac. R. R. Co.*, 222 U. S. 541, 547 [32 S. Ct. 108, 56 L. Ed. 308]; *Tagg Bros. & Moorhead* v. *United States*, 280 U. S. 420, 444 -50 S. Ct. 220, 74 L. Ed. 524]; *Swayne & Hoyt. Ltd.*, v. *United States*, 300 U. S. 297, 304 [57 S. Ct. 478, 81 L. Ed. 659]; *Del Vecchio* v. *Bowers*, 296 U. S. 280, 286 [56 S. Ct. 190, 80 L. Ed. 229]; *Voehl* v. *Indemnity Insurance Co.*, 288 U. S. 162, 166 [53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245]; *Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S. 197, 229 [59 S. Ct. 206, 83 L. Ed. 126]; *Federal Trade Com.* v. *Algoma Lumber Co.*, 291 U. S. 67, 73 -54 S. Ct. 315, 78 L. Ed. 655]; *Federal Radio Com.* v. *Nelson Bros., etc. Co.*, 289 U. S. 266, 277 [53 S. Ct. 627, 77 L. Ed. 1166, 89 A. L. R. 406].) The due process clause of the federal Constitution imposes no barrier to this general rule of administrative finality as to findings of fact. (See Black, *'Jurisdictional Fact' Theory and Administrative Finality*, [1937] 22 Cornell L. Q. 349, 369; Tollefson, *Administrative Finality*, [1931] 29 Mich. L. Rev. 839, 840; Landis, *Administrative Law and the Courts*, [1938] 47 Yale L. J. 519; [1925] 23 Mich. L. Rev. 233; [1938] 24 Va. L. Rev. 653, 655; [1941] 8 Geo. Wash. L. Rev. 409, 508.)

The conclusion is inevitable that the due process clause of the Fourteenth Amendment imposes no restriction on the action of the states which the due process clause of the Fifth Amendment does not impose upon the federal government. There are, in fact, decisions of the United States Supreme Court (not mentioned in the Drummey decision) which hold that the due process clause of the Fourteenth Amendment does not prohibit the vesting of power in a state administrative agency to make findings of fact which are final if based upon substantial evidence. (*Helfrick* v. *Dahlstrom Metallic Door Co.*, 256 N. Y. 199 [176 N. E. 141], affirmed per curiam, 284 U. S. 594 [52 S. Ct. 202, 76 L. Ed. 511]; see, also *Hardware Dealers' Mut. Fire Ins. Co.* v. *Glidden Co.*, 284 U. S. 151, 157-158 [52 S. Ct. 69, 76 L. Ed. 214]; *Long Island Water Supply Co.* v. *Brooklyn*, 166 U. S. 685 [17 S. Ct. 718, 41 L. Ed. 1165]; *Louisville & Nashville R. R. Co.* v. *Garrett*, 231 U. S. 298, 313 [34 S. Ct. 48, 58 L. Ed. 229]; *Reetz* v. *Michigan*, 188 U. S. 505, 507-509 [23 S. Ct. 390, 47 L. Ed. 563]; *State* ex rel. *Williams* v. *Whitman*, 116 Fla. 196, 199 [150 So. 136, 156 So. 705, 95 A. L. R. 1416]; *Stettler* v. *O'Hara*, 69 Ore. 519 [139 Pac. 743, Ann. Cas. 1916A, 217, L. R. A. 1917C, 944], affirmed, 243 U. S. 629 [37 S. Ct. 475, 61 L. Ed. 937]; *People* ex rel. *Lieberman* v. *Van de Carr*, 175 N. Y. 440, 445 [67 N. E. 913, 108 Am. St. Rep. 781], affirmed, 199 U. S. 552, 562 [26 S. Ct. 144, 50 L. Ed. 305]; *Nega* v. *Chicago Rys. Co.*, 317 Ill. 482 [148 N. E. 250, 39 A. L. R. 1057]; *People* ex rel. *Consolidated Water Co.* v. *Maltbie*, 275 N. Y. 357 [9 N. E. (2d) 961]; *General Acc. F. & L. Assur. Corp.* v. *Industrial Com.*, 223 Wis. 635 [271 N. W. 385]; see, 21 R. C. L. 365; 12 Am. Jur. 329; 16 C. J. S. 1287.) It has been held that the due process clause does not guarantee judicial process in all cases (*Dohany* v. *Rogers*, 281 U. S. 362 [50 S. Ct. 299, 74 L. Ed. 904]; *Den ex Dem. Murray* v. *Hoboken Land & Imp. Co.*, 18 How. [U. S.] 272 [15 L. Ed. 372]), and that it does not guarantee any particular procedure. (*Hurtado* v. *California*, 110 U. S. 516, 537 [4 S. Ct. 111, 292, 28 L. Ed. 232].) It was even held in *Reetz* v. *Michigan*, supra, p. 507, that the due process provision was not violated by a state statute vesting the final decision of *questions of law* in a state board of medical examiners. The court said, ". . . we know of no provision in the federal Constitution which forbids a state from granting to a tribunal, whether called a court or a board of registration, the final

determination of a legal question . . . Due process is not necessarily judicial process. . . ."

Finally, the conclusion in the Drummey decision concerning the due process requirements of the Fourteenth Amendment resulted, not only from failure to consider the other federal decisions in the field, but from a misapplication of the three decisions which were cited. The requirement in those cases of a judicial re-examination of administrative findings of fact was an exception to the general doctrine of administrative finality expressed above, and it was limited to two specific situations where the particular factual determination involved the constitutional jurisdiction of the particular agency. Thus, in establishing rates for public utilities it was held that an administrative finding that the rate was non-confiscatory should be subjected to the same scrutiny that a legislative declaration to that effect would be accorded in order that the court might assure itself that the constitutional guarantee of just compensation had been met. (*Ohio Valley Water Co.* v. *Ben Avon Borough, supra; St. Joseph Stockyards Co.* v. *United States, supra.*) A recent case indicates clearly that this exception to the rule of administrative finality is limited to this phase of the rate-making power. (*Railroad Com.* v. *Rowan & Nichols Oil Co.,* 310 U. S. 573, 581 [60 S. Ct. 1021, 84 L. Ed. 1368].) The other exceptional situation involved an issue of fact upon which the jurisdiction of the agency depended within the provisions of the federal Constitution. Thus, it was held in *Crowell* v. *Benson, supra,* that the existence of the master and servant relation and the question of whether the injury occurred upon navigable waters were facts which, if erroneously determined, might permit the agency to operate outside the scope of its constitutional power. The rule of administrative finality on findings of fact could not be applied, therefore, because the court was required to satisfy itself that constitutional limitations had not been exceeded. (*Crowell* v. *Benson, supra,* pp. 56-58.) The limited nature of this exception, also, is indicated by the cases involving the same statute which hold that ordinarily administrative findings of fact are conclusive if supported by substantial evidence. (*South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251, 258 [60 S. Ct. 544, 84 L. Ed. 732]; 24 Va. L. Rev. 653; 25 Cornell L. Q. 274.) Upon examination of the many federal cases defining the requirements of the due process clause so far as administrative findings of fact are con-

cerned, it can no longer be disputed that the Drummey decision reached a wholly erroneous conclusion through its reliance upon three federal cases which deal with dissimilar situations and which are conceded to be sporadic exceptions to the general rule of administrative finality. (See, McGovney, *op. cit. supra*, p. 134 et seq.; Dickinson, *Crowell* v. *Benson; Judicial Review of Administrative Determinations of "Constitutional Fact"*, 80 U. of Pa. L. Rev. 1055; Black, *"Jurisdictional Fact" Theory and Administrative Finality*, 22 Cornell L. Q. 349.)

*(c) Reliance upon the requirements of the California Constitution.*

Although the majority opinion in the present case adopts and extends the conclusions announced in the Drummey and McDonough decisions, it concedes in effect that the theory underlying those decisions was in error. The so-called "mandatory" requirement of the federal cases (see, *McDonough* v. *Goodcell, supra*) has been re-stated and the federal cases are now said to be persuasive only. The support for the majority opinion in this case, therefore, is sought in the provisions of the California Constitution.

The reasoning in support of this position is based upon a misapplication of the doctrine of separation of powers. The position advanced, simply stated, is this: (1) the basic judicial power of the state can be vested only in certain named courts of law; and (2) the power to make binding determinations of fact and to issue orders based thereon affecting private rights of property, which has traditionally been said to be quasi-judicial in nature, constitutes an exercise of power so basically judicial that it can be performed only by a court of law. The first proposition has been accepted doctrine throughout the United States for generations; the second announces a new rule as to the lesser, quasi-judicial power which is not supported by our cases or decisions elsewhere. It results from the failure to recognize the hitherto well-established class of inferior adjudicating functions which have been called "quasi-judicial" in nature. It has long been established that the separation of powers doctrine cannot be interpreted as a rigid and absolute separation of governmental functions. It is, rather, a general doctrine designed to prevent the vesting of the basic power of any branch of the government in the hands of another branch. (Hart, Introduction to Administrative Law, [1940] pp. 146-150; Cush-

man, The Independent Regulatory Commissions, [1941] pp. 420-448; Green, *Separation of Governmental Powers*, [1920] 29 Yale L. J. 369; [1935] 2 Univ. of Chi. L. Rev. 385; [1934] 58 Am. Bar Assn. Rep. 407, 410-414; [1936] 51 Pol. Sci. Q. 383.) The California decisions have not followed any different rule. (See, *Parker* v. *Riley,* 18 Cal. (2d) 83 [113 Pac. (2d) 873]; *Ray* v. *Parker,* 15 Cal. (2d) 275, 290 [101 Pac. (2d) 665]; *Agricultural Prorate Com.* v. *Superior Court,* 5 Cal. (2d) 550, 568 [55 Pac. (2d) 495]; *Globe Cotton Oil Mills* v. *Zellerbach,* 200 Cal. 276 [252 Pac. 1038]; *Brecheen* v. *Riley, supra; Housing Authority of L. A. County* v. *Dockweiler,* 14 Cal. (2d) 437 [94 Pac. (2d) 794]; [1931] 19 Cal. L. Rev. 448; 5 Cal. Jur. 658, 677, 683.)

Although the basic power of any one of the three co-ordinate branches of the government can be exercised by the individual branches only, there are incidental governmental activities which may appropriately be exercised by any or all of the agencies of the government. Certain of these functions may be a normal incident of legislative action or an ordinary accompaniment of true judicial action, but unless the basic constitutional power of the particular branch of the government is involved, such quasi-legislative or quasi-judicial power may be exercised by other agencies of government. Thus, it has been recognized that the ascertainment of facts based upon evidence taken in the course of a hearing, while an ordinary incident of a judicial proceeding, may also have an appropriate place in action by the legislative or executive branch of the government. (See Brown, *Administrative Commissions and the Judicial Power,* [1935] 19 Minn. L. Rev. 261, 275.) As the United States Supreme Court has said in a leading case: "Even where it is essential to maintain strictly the distinction between the judicial and other branches of the government, it must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as distinguished from judicial, powers. The legislature, had it seen fit, might have conducted similar inquiries through committees of its members, or specially constituted bodies . . . and it might have used methods like those of judicial tribunals in the endeavor to elicit the facts." ( *Louisville & N. R. R. Co.* v. *Garrett,* 231 U. S. 298, 307 [34 S. Ct. 48, 58 L. Ed. 229]; see, also, *In re Battelle,* 207 Cal. 227 [277 Pac.

725, 65 A. L. R. 1497].) It has been held in this state, in conformity with the prevailing doctrine, that the power to make findings of fact upon the basis of which legislation is to become effective may be vested in administrative agencies (*Olive Proration Program Committee* v. *Agricultural Prorate Com.*, 17 Cal. (2d) 204, 208 [109 Pac. (2d) 918]; *Globe Cotton Mills* v. *Zellerbach, supra,* at p. 277) and in members of the executive branch of the government. (*Brock* v. *Superior Court,* 9 Cal. (2d) 291 [71 Pac. (2d) 209, 114 A. L. R. 127]; *Ray* v. *Parker, supra,* pp. 290-292.)

It therefore becomes apparent that there is both a subsidiary legislative function which may properly be devolved upon other agencies of government without violating the provisions of the Constitution (*Parker* v. *Riley, supra*) and an inferior adjudicating function which, though judicial in nature, may be performed by other agencies of government without amounting to an unconstitutional exercise of judicial power. The contention has frequently been made that a statute vesting power in a state-wide administrative agency to make orders based upon determinations of fact is unconstitutional as vesting judicial power in the agency. These contentions have been repeatedly rejected. (*Ray* v. *Parker,* 15 Cal. (2d) 275, 290 [101 Pac. (2d) 665]; *Brecheen* v. *Riley,* 187 Cal. 121 [200 Pac. 1042]; *Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965]; *Globe Cotton Oil Mills* v. *Zellerbach,* 200 Cal. 276 [252 Pac. 1038]; *Ex parte Whitley,* 144 Cal. 167 [77 Pac. 879, 1 Ann. Cas. 13]; *Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468, 483 [238 Pac. 703].) It has been held that the power to make determinations of fact upon the basis of which a license to engage in business may be revoked or suspended may be vested in an administrative agency without violating the Constitution (*Ray* v. *Parker, supra,* pp. 290-292). The right to engage in a lawful business or profession is a valuable right, but it is subject to the proper exercise of the police power; and the power to make determinations of fact upon which a license revocation is based does not constitute an exercise of the judicial power of the state. (*Brecheen* v. *Riley, supra,* p. 125.) Such power partakes of the judicial function, but it does not constitute "the judicial power" within the meaning of the constitutional provision. (*Suckow* v. *Alderson, supra,* p. 250; *Ex parte Whitley, supra,* p. 179.) Even though a statute provides that the determinations of fact of a state-wide administrative agency are to be conclu-

sive (Stats. 1925, pp. 595, 599) there is no unconstitutional delegation of judicial power to the agency. (*Globe Cotton Oil Mills* v. *Zellerbach, supra,* p. 277.)

In the face of this trend of authority, it is difficult to see how the majority could escape the conclusion that the functions of the Board of Optometry in the present case, while partaking of the adjudicating function, were properly classifiable as quasi-judicial in nature and properly delegable to administrative agencies. The explanation is found in the two decisions previously referred to. In *Whitten* v. *California State Board of Optometry, supra,* the court might have merely repeated the procedural error of the Standard Oil case by holding that, while quasi-judicial functions were exercised, constitutional judicial power was not involved, and thus no basis was presented for the use of certiorari or prohibition. The court in that case, however, added the wholly unnecessary comment that the functions of such professional licensing boards could no longer be called quasi-judicial and doubt was cast upon the previous cases which had so classified these functions. In *Drummey* v. *State Board of Funeral Directors, supra,* page 81, this statement was rephrased and it was said that the Constitution forbade the vesting of *either* judicial or quasi-judicial powers in administrative boards. The majority opinion in the present case does not mention quasi-judicial functions, and the inference seems to be that any function which partakes of the adjudicating power must be classified as the constitutional judicial power and may be exercised by courts of law alone. The conclusion that it would be an unconstitutional delegation of basic judicial power to authorize an administrative board to revoke professional licenses upon determinations of fact which are conclusive if founded upon substantial evidence finds no support in the decisions of this state prior to 1936 and it is contrary to the decisions of other jurisdictions. (See: *State Board of Medical Examiners* v. *Spears,* 79 Colo. 588 [247 Pac. 563, 54 A. L. R. 1498], error dismissed, 275 U. S. 508 [48 S. Ct. 158, 72 L. Ed. 398] ; *State* ex rel. *Williams* v. *Whitman,* 116 Fla. 196, 199 [150 So. 136, 156 So. 705, 95 A. L. R. 1416] ; *Klafter* v. *State Examiners,* 259 Ill. 15 [102 N. E. 193 Ann. Cas. 1914 B, 1221, 46 L. R. A. (N. S.) 532] ; *Nega* v. *Chicago Rys. Co.,* 317 Ill. 482 [148 N. E. 250, 39 A. L. R. 1057] ; *Hunter* v. *Colfax Consol. Coal Co.,* 175 Iowa 245, 308-319 [154 N. W. 1037, 157 N. W. 145, Ann. Cas. 1917 E, 803, L. R. A. 1917 D, 15] ; *Iowa Eclectic Med. College*

*Assn.* v. *Schrader,* 87 Iowa 659 [55 N. W. 24, 20 L. R. A. 355] ; *State* v. *Board of Med. Examiners,* 34 Minn. 387 [26 N. W. 123] ; *State* ex rel. *Hurwitz* v. *North,* 304 Mo. 607 [264 S. W. 678], affirmed, 271 U. S. 40 [46 S. Ct. 384, 70 L. Ed. 818] ; *Missouri, K. & T. R. R. Co.* v. *Shannon,* 100 Tex. 379, 389 [100 S. W. 138, 10 L. R. A. (N.S.) 681].)

The majority of the court now seeks additional support for its position in the specific wording of the California Constitution, article VI, section 1, which provides that the judicial power of the state shall be vested ''in the senate, sitting as a court of impeachment, in a supreme court, district courts of appeal, superior courts, such municipal courts as may be established . . . and *such inferior courts as the Legislature may establish in any incorporated city or town,* township, county or city and county.'' Cases from all other states and from the federal system are distinguished by the majority upon the theory that only in California is the power of the legislative branch in creating inferior courts limited to *local* inferior courts. Therefore, it is argued state-wide administrative boards in other jurisdictions may be considered inferior courts which can constitutionally exercise true judicial power. There are two answers to this. The first is that such administrative agencies are not in fact considered inferior courts by the jurisdictions in which they exist, and it has repeatedly been held that such bodies cannot exercise constitutional judicial power. (Cf. *Batty* v. *Arizona State Dental Board* [Ariz.], 112 Pac. (2d) 870, 873; Cushman, *The Constitutional Status of the Independent Regulatory Commissions,* 24 Cornell L. Q. 13, 37.) The second answer is that reliance upon this constitutional provision begs the question at issue here *since it assumes that a grant of basic judicial power has been made* to the state-wide licensing agencies in this state. The provisions of article VI, section 1, add nothing to the separation of powers provision of article III, section 1, for if quasi-judicial power, rather than constitutional judicial power, is actually involved, no violation of either constitutional provision is present.

Finally, then, let us examine the cases which the majority cites in support of the conclusion, (which is contrary to the cases in this state prior to 1936 and to decisions throughout the country,) that the power to make an order of revocation based upon a binding determination of fact is an exercise of constitutional judicial power, rather than an exercise of quasi-

judicial power. We may exclude those cases, derived from the Standard Oil case, which we have already shown to be erroneous. The first group of cases relied upon by the majority merely states the fundamental principle that the constitutional judicial power can be exercised only by courts of law, or by special bodies invested with such power by the Constitution. (Cf. *Pryor* v. *Downey*, 50 Cal. 388 [19 Am. Rep. 656]; and other cases cited in the majority opinion.) The second group of cases involves the Industrial Accident Commission. Insofar as these cases repeat the general separation of powers doctrine they add nothing to the cases first cited, and the principle stated is the traditional one. The decisions in *Pacific Coast Casualty Co.* v. *Pillsbury*, 171 Cal. 319 [153 Pac. 24], and *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407 [156 Pac. 491, Ann. Cas. 1917 E, 390], contain particular language, however, upon which the majority relies. In these cases it was said that, where a statute creates a special liability upon the part of employers and grants power to an agency of government to determine when liability exists and to render a judgment in favor of the employee against the employer, the power exercised constitutes basic judicial power within the meaning of the Constitution. (*Western Metal Supply Co.* v. *Pillsbury, supra,* p. 410.) The Industrial Accident Commission cases, however, cannot be used to support the theory that constitutional judicial power is involved in making determinations of fact upon which professional licenses are revoked, for in those cases the court clearly distinguished the licensing situation as one in which strictly judicial power was not involved. (See, *Western Metal Supply Co.* v. *Pillsbury, supra,* p. 412.) Those cases, in other words, clearly recognize the distinction between the constitutional judicial power and the quasi-judicial power. The duties of the professional licensing agencies were conceded to be quasi-judicial in nature. Such quasi-judicial determinations were, of course, reviewable on certiorari and the board's determinations of fact were final if supported by evidence. (*Fuller* v. *Board of Medical Examiners*, 14 Cal. App. (2d) 734, 742 [59 Pac. (2d) 171]; *Suckow* v. *Alderson, supra.*)

The third group of cases relied upon by the majority is the so-called Water Commission group. We have already indicated the use which was made of these cases as a means of supporting the Standard Oil and Drummey decisions. The cases held that where an agency had a mere supervisorial

authority in the granting of preliminary water permits and where none of the ordinary incidents of quasi-judicial power were found, there was neither quasi-judicial nor judicial power conferred upon the agency. (*Tulare Water Co.* v. *State Water Comm., supra,* p. 537.) These decisions do not support the conclusion of the majority that basic judicial power is involved in the present situation. The dictum in the concurring opinion means only that, as an aid to interpreting the legislative intent in delegating the duty of issuing permits, the court could consider the probability that an unconstitutional delegation of judicial power might have been involved if the statute were interpreted to authorize the commission to adjudicate title to real property. (See, Turrentine, *op. cit. supra,* p. 282.) At that very time, however, the same court recognized that the revocation of professional licenses involved only quasi-judicial power reviewable by certiorari. (*Brecheen* v. *Riley,* 187 Cal. 121 [200 Pac. 1042].)

The final group of cases relied upon by the majority involves the State Bar Act. It should be noted first that they furnish no direct authority upon the constitutional point for which they are cited since the cases have consistently held that the legislature *did not intend* the determinations by the Board of Governors to be final even though based upon substantial evidence. (*In re Shattuck,* 208 Cal. 6, 12 [279 Pac. 998].) It has also been said that the Board of Governors is an administrative arm of the court (*Fish* v. *State Bar,* 214 Cal. 215, 225 [4 Pac. (2d) 937]; *Furman* v. *State Bar,* 12 Cal. (2d) 212, 214 [83 Pac. (2d) 12]) and that its findings are merely those of a special intermediary agency. (*In re Petersen,* 208 Cal. 42, 46 [280 Pac. 124].) Insofar as the nature of constitutional judicial power is involved in these State Bar decisions as a basis for the interpretation given the statute, there is authority which contradicts the suggestion that the disbarring of an attorney requires a judicial examination of the evidence. (See, Turrentine, *May the Bar Set Its Own House in Order,* 34 Mich. L. Rev. 200, 214, et seq.) But even conceding the validity of that assumption, it is clear that the discipline of attorneys is a matter of particular judicial concern over which the courts have asserted inherent power. (See, *In re Lacey,* 11 Cal. (2d) 699, 701 [81 Pac. (2d) 935].) If there is basic judicial power involved in the disciplining of an attorney, therefore, the explanation comes from the peculiar relation which the attorney bears to the judicial

system. This is particularly obvious in view of the fact that when this theory was announced in the Shattuck case and thereafter, the court was apparently satisfied that the revocation or suspension of other professional licenses involved only quasi-judicial power the exercise of which was reviewable on certiorari. (See, *Painless Parker* v. *Board of Dental Examiners*, 216 Cal. 285 [14 Pac. (2d) 67].) It follows that the State Bar cases do not support the conclusion of the majority that constitutional judicial power would be involved if an administrative agency were empowered to make binding determinations of fact upon the basis of which orders revoking or suspending professional licenses were issued.

### 3. *The Practical Problem.*

The interpretation placed upon our state Constitution by the majority opinion is unsound, as was the interpretation placed upon the federal Constitution in the Drummey and McDonough decisions. Once the absence of any constitutional requirement on this point is understood there remains no possible justification for the result in the present case. Any rule which requires that a complete judicial retrial be held *in each case* where administrative action results in the deprivation of a property right is unworkable. It must be kept in mind that the majority opinion announces *principles of constitutional law* that of necessity apply to all determinations of fact affecting property and are not limited to the revocation of professional licenses. Courts will be required to try questions of fact in countless situations heretofore settled by administrative agencies. In many such cases those facts may be determined by jurors, certainly no better qualified than trained administrators to weigh evidence in cases that frequently involve technical subjects. We must also consider that the administrative agency will be stripped of the prestige and authority necessary to enable it to perform its functions efficiently if the courts will neither rely upon the record made before it nor accord its findings any finality whatsoever. What useful purpose can an agency serve by conducting hearings in such cases?

We cannot treat the judicial review of administrative action as a static procedure requiring an identical judicial investigation in each instance. The degree of finality accorded the findings of administrative agencies created to carry out

the legislative purposes is primarily a question of policy for the legislature and issues of such fundamental importance to the administration of government must be determined by reference to the intention of the law-making body. The legislature is precluded by our Constitution from imposing non-judicial duties upon our courts, thus it cannot provide for a direct appeal from an administrative agency to a court. (*Mojave River Irr. Dist.* v. *Superior Court,* 202 Cal. 717, 724 [262 Pac. 724]; *Collier & Wallis* v. *Astor,* 9 Cal. (2d) 202 [70 Pac. (2d) 171]; cf. *Federal Radio Com.* v. *General Electric Co.,* 281 U. S. 464, 469 [50 S. Ct. 389, 74 L. Ed. 969]; *Federal Radio Com.* v. *Nelson Bros.,* 289 U. S. 266, 276 [53 S. Ct. 627, 77 L. Ed. 1166, 89 A. L. R. 406].) In many instances, however, the legislature has sought to indicate the degree of finality to be given to administrative findings of fact. Where it was proper to do so, the legislature has occasionally specified a review of the administrative action by an original court proceeding in which the facts determined by the administrative agency are accorded no finality at all but are determined de novo in the superior court. (See, Alcoholic Beverage Control Act, Deering's Gen. Laws [1937], Act 3796, sec. 46; Deering's Gen. Laws [1937], Act 986, sec. 13.12; Labor Code, sec. 1647, Stats. 1937, page 240; also, *Collier & Wallis* v. *Astor, supra.*) In certain instances the legislature has merely indicated that the findings of fact of a particular administrative agency or officer are to be accorded a high degree of finality. (See, Labor Code, sec. 1598, Stats. 1937, p. 234; Public Resources Code, sec. 3355, Stats. 1939, p. 1132; Deering's Gen. Laws [1937], Act 3421, sec. 9.) In other statutes the legislature has provided generally that action taken under the authority thereof may be reviewed in court, without making any provision as to the nature and extent of the review. (Agricultural Code, sec. 735.6, Stats. 1935, p. 924; Vehicle Code, sec. 317, Stats. 1935, p. 141.) In most of the regulatory statutes incorporated in the Business and Professions Code, including the statute here involved, the legislature has indicated its intention that the administrative decision be accorded as much finality as possible by vesting in such agencies the power to revoke or suspend licenses without any provision at all for the judicial review of such action. (Dental Practice Act, Bus. & Prof. Code, secs. 1670-1680; Medical Practice Act, Bus. & Prof. Code, secs. 2360-2408; Optometry

Act, Bus. & Prof. Code, secs. 3090-3106; Pharmacy Act, Bus. & Prof. Code, secs. 4210-4214.)

Where there is neither a constitutional nor statutory requirement that a court make the determination of fact or reweigh the evidence upon which the administrative agency acted, the duty of the judicial branch is adequately fulfilled by a review upon certiorari which extends to the questions of law involved. A review upon the issues of law would, of course, include such questions as whether the agency has regularly pursued the authority vested in it, whether it has acted arbitrarily and whether there is substantial evidence to support its determinations of fact. Our decisions have recognized that administrative rulings on questions of law cannot be accorded finality. Such questions may be determined conclusively only by a court exercising constitutional judicial power. (*Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal. (2d) 321 [109 Pac. (2d) 935].) Upon issues of fact, however, where there is no constitutional requirement that the facts be judicially determined and no statutory indication that the review was meant to extend to a re-examination of questions of fact, the court should uphold the administrative determination unless it is found that there is no substantial evidence to support the finding. This rule, which is accepted in other jurisdictions, can be re-established here only by overruling the recent decisions which we have shown to be in error. Where any court has declared a rule that, upon re-examination, seems clearly erroneous, it has both a power and a duty to reject it and to state the correct rule, to avoid further confusion. (See, *Hart* v. *Burnett,* 15 Cal. 530, 600; *Houghton* v. *Austin,* 47 Cal. 646, 668; *People* v. *Lynch,* 51 Cal. 15, 39 [21 Am. Rep. 677]; 7 Cal. Jur. 632.) As this court has said, "If, after fully considering a former decision, a judge is convinced that it is wrong, it becomes simply a question of public policy, whether . . . it will produce more of evil than of good to restore the law to its integrity . . . 'such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired . . . by the perpetuity of error'." (*Houghton* v. *Austin, supra,* p. 667, quoting Chancellor Kent, in overruling the conclusion previously reached in *Savings & Loan Society* v. *Austin,* 46 Cal. 415.)

This concept of judicial duty is particularly apt in the present situation. Not only is the majority of this court

engaged in perpetuating self-induced error, but the error constantly reacts upon other situations to create logically unsound distinctions. For example, where the functions of a local administrative agency are involved it would be proper under the majority position to classify its activities as judicial and reviewable on certiorari, while exactly the same function performed by a state-wide agency could not even be classified as *quasi-judicial* in nature. (See, Elliott, *Certiorari and the Local Board,* 29 Cal. L. Rev. 586.) If upon analysis, the duties of each agency are *quasi-judicial,* the court should recognize that fact. Similarly, the majority position has led to an unsound distinction between suspending a professional license and refusing to grant a license where the result in each instance is to eject a person from a business in which he has engaged for a number of years. (Cf. *Drummey* v. *State Board of Funeral Directors, etc., supra;* *McDonough* v. *Goodcell, supra; McGovney, op. cit. supra,* p. 134; 21 R. C. L. 362.) The position taken in the majority opinion can lead only to further unfortunate complications in this field of the law.

For the reasons set forth herein, it seems clear to me that the following decisions of this court should be overruled insofar as they are contrary to the views expressed herein: *Standard Oil Co.* v. *Board of Equalization,* 6 Cal. (2d) 557 [59 Pac. (2d) 119]; *Whitten* v. *California State Board of Optometry,* 8 Cal. (2d) 444 [65 Pac. (2d) 1296, 115 A. L. R. 1]; *Drummey* v. *State Board of Funeral Directors,* 13 Cal. (2d) 75 [87 Pac. (2d) 848]; and *McDonough* v. *Goodcell,* 13 Cal. (2d) 741 [91 Pac. (2d) 1035, 123 A. L. R. 1205]. The proceeding in mandamus in the present case should be treated as a proceeding in certiorari (*Board of Trustees* v. *State Board of Equalization,* 1 Cal. (2d) 784 [37 Pac. (2d) 84, 96 A. L. R. 775]), and the judgment of the trial court should be affirmed.

Edmonds, J., and Traynor, J., concurred.

Respondents' petition for a rehearing was denied April 15, 1942. Gibson, C. J., Edmonds, J., and Traynor, J., voted for a rehearing.